William A. HILLEY, et al.

v.

Stephen T. LAWRENCE.[1]

No. 2007–320–Appeal.

Supreme Court of Rhode Island.

June 19, 2009.

v. *Nunez*, 634 A.2d 1167, 1171 (R.I.1993) (same).

1. The original complaint named both Stephen T. Lawrence and Theresa J. Lawrence as defendants. However, Stephen and Theresa divorced before the trial began and Theresa executed a quitclaim deed in favor of her former husband with respect to the land that is the subject of this litigation. Therefore, the trial justice dismissed Theresa as a defendant.

Jeremiah R. Leary, Esq., Tiverton, for Plaintiff.

James P. Marusak, Esq., Providence, for Defendant.

Present: GOLDBERG, Acting C.J., FLAHERTY, SUTTELL, ROBINSON, JJ., and WILLIAMS, C.J. (ret.).

## OPINION

Acting Chief Justice GOLDBERG, for the Court.

This case came before the Supreme Court on May 6, 2009. The defendant, Stephen T. Lawrence (defendant or Lawrence), and the plaintiffs, William A. Hilley and Toni Lynn Hilley (collectively plaintiffs or Hilleys), own adjacent undeveloped lots in a subdivision in the Town of Tiverton.[2] The plaintiffs claimed that the defendant does not have the right to pass over their land to gain access to his property from a right-of-way within the subdivision, and sought to enjoin him permanently from crossing over their land. A trial justice of the Superior Court, sitting without a jury, found in favor of the plaintiffs, and the defendant appealed. For the following reasons, we affirm the judgment of the Superior Court.

## Facts and Travel

The subdivision under review in this case was recorded on June 29, 1942, in a plan entitled the Sunderland Plan (Sunderland Plan or plan).[3] The plan sets out twelve lots, with ten lots numbered one through ten, and two unnumbered lots that are labeled "Sunderland." The Hilleys purchased the two unnumbered lots (Hil-

ley land) on September 15, 1983, and Lawrence purchased lot No. 6 (Lawrence land or subject parcel) on May 19, 1998. The Hilley land is bounded in part by the Lawrence land and separates lots No. 6 and No. 7 from the remaining lots in the subdivision. The Hilley land and the subject parcel also have frontage on Riverside Drive, a public street in Tiverton. The evidence disclosed a steep slope between the paved portion of Riverside Drive and the subject parcel; an old staircase leads from the roadway to the top of the slope of the property.

In addition to the lots on the Sunderland Plan, there is a right-of-way labeled "Drive," which is demarcated by dashed lines. The parties refer to this right-of-way as Sunderland Drive, and we shall do the same. Sunderland Drive leads into the plat from Riverside Drive through the southwest corner of the Hilley land, curves north, and continues through the middle of the subdivision. Sunderland Drive abuts all the lots on the Sunderland Plan except for the Lawrence land and the adjacent lot No. 7, which also has access from Riverside Drive. With respect to the right-of-way through the Sunderland Plan, the source deeds from the Sunderlands to all the lots, except for lot No. 7, contain the following language:

"That portion of the above described premises which lies within the boundary lines of a drive shown upon a plan entitled 'Plan of Property in Tiverton, R.I. surveyed for George S. and Catherine B. Sunderland, June 29, 1942, H.J. Harvey, C.E.' is subject to a right of way over,

2. Both parties also own residential properties in the area. However, only the undeveloped lots are involved in this litigation.

3. George and Catherine Sunderland subdivided the land after purchasing the entire tract

from the trustees of the New York, New Haven and Hartford Railroad Company and the Old Colony Railroad Company on May 12, 1942.

under and across the same for all purposes, extending from the boundary line of Barker Heights, so-called, southerly and westerly to the Town or Public highway, which said way shall remain open and unobstructed forever for the benefit of the grantors, their heirs and assigns, and the owners of all other land shown upon said plan, their heirs and assigns. Hereby granting to the grantees herein a right of way for all purposes over, under and across said drive, extending from the boundary line of Barker Heights, so-called, southerly and westerly to the Town or Public highway."

The genesis of this not-so-neighborly feud is Lawrence's claim that he is entitled to use Sunderland Drive for vehicular access to his property over and across the Hilley land. The Hilleys contend that Lawrence must pass over their property for ingress and egress from Sunderland Drive; and, they argue, defendant does not have a right to do so. In November 2001, after having their land surveyed, the Hilleys erected a fence on their property to block access to the subject parcel from Sunderland Drive and their land. On July 19, 2003, the Hilleys returned from vacation to find that Lawrence had removed both the fence and a recently planted garden and had constructed a driveway, across the Hilley land, from his lot to Sunderland Drive.

The Hilleys filed the present action on July 25, 2003. They sought to enjoin Lawrence from passing over their land to access his lot. They also requested damages for trespass. The defendant counterclaimed that his right of access was derived from his deed that expressly grants the owner of lot No. 6 an easement to use Sunderland Drive. Alternatively, defendant claimed easement rights to pass over the Hilley land to reach Sunderland Drive based on theories of an easement by implication, prescription, acquiescence, or necessity.

The trial justice heard testimony about the historical use of the Lawrence land. Three witnesses, all of whom had lived in the area or visited it regularly for more than forty-five years, described a narrow foot path across the Lawrence land. However, none of them recalled a driveway on the property or cars parked on the Lawrence land.[4]

The parties testified about the more recent use of the Lawrence land. According to Mr. Hilley, Matthew and Frances Shea, the previous owners of the subject parcel from 1972 until 1998, were "very good friends [and] great neighbors." He explained that he gave the Sheas "carte blanche" permission to pass over his land to reach the subject parcel. The defendant, on the other hand, testified that before he bought the lot, evidence of vehicular traffic from Sunderland Drive was apparent. He was informed by the real estate agent and the seller, the Sheas' son, that he could pass over the Hilley land to gain access to the subject parcel. However, Lawrence neither asked for nor received permission from the Hilleys to do so.

Two professional land surveyors, Richard Lipsitz and Joseph Marrier, both testified that the use of dashed lines to demarcate Sunderland Drive on the Sunderland Plan indicated that the lines represented

4. A fourth witness, who lived in the area from 1950 (when he was five-years old) until 1953 and who visited regularly until 1963, testified that he remembered a house on the Lawrence land and a driveway from Sunderland Drive that consisted of two ruts filled with sea shells. However, on cross-examination, he was shown an aerial photograph taken in 1951 and admitted that there was no house visible on the Lawrence land.

an approximate location of the right-of-way rather than a fixed boundary. The surveyors also reviewed an aerial photograph of the area taken in 1939 that was introduced by defendant; each testified that it appeared to show a small driveway in the same area where Lawrence had built his driveway. When questioned about access from Riverside Drive, both witnesses agreed that it was possible to build a driveway, but, according to Lipsitz, it would necessitate excavating the area and constructing retaining walls. William Smith, an engineer retained by defendant, testified about several house plans that he had drafted at defendant's behest, including a plan with a driveway for the Lawrence land. One plan showed two potential locations for a driveway, one of which led directly from Riverside Drive to a garage under the proposed dwelling. The alternative plan depicted access to the property from Sunderland Drive.[5]

The trial justice issued a written decision on June 29, 2007, and judgment was entered on July 20, 2007. In her decision, the trial justice first rejected Lawrence's claim that his deed grants a right of access from Sunderland Drive because she found that the boundary lines of the deeded right-of-way, as set forth on the plan, did not abut the Lawrence land. Next, the trial justice determined that, although the evidence disclosed that the Sheas crossed the Hilley land for vehicular access to the subject parcel, they did so with plaintiffs' express permission, a circumstance that defeated defendant's claims to easements by prescription and acquiescence as a matter of law.

The trial justice also found that there was no easement by necessity because the evidence demonstrated that the lot could be accessed from Riverside Drive, albeit at some expense. Furthermore, the trial justice rejected Lawrence's argument that he was entitled to an easement by implication because she found that there was no evidence that the original grantors intended to reserve an easement for the benefit of the Lawrence land. Finally, the trial justice denied plaintiffs' request for damages because they failed to present sufficient evidence of the amount of damages suffered.[6] The defendant timely filed a notice of appeal.

## Standard of Review

▆ This Court will reverse the decision of a trial justice to grant or deny a permanent injunction only "when it can be shown that the trial justice misapplied the law, misconceived or overlooked material evidence or made factual findings that were clearly wrong." *Holden v. Salvadore*, 964 A.2d 508, 512–13 (R.I.2009) (quoting *Renaissance Development Corp. v. Universal Properties Group, Inc.*, 821 A.2d 233, 236 (R.I.2003)). This Court's review of the factual findings of a trial justice sitting without a jury is deferential. *Grady v. Narragansett Electric Co.*, 962 A.2d 34, 41 (R.I.2009) (citing *Manchester v. Pereira*, 926 A.2d 1005, 1011 (R.I.2007)). We accord the same deference to the "resolution of mixed questions of law and fact, as well as the inferences and conclusions drawn from the testimony and evidence * * *." *Providence Lodge No. 3, Fraternal Order of Police v. Providence External*

---

**5.** Mr. Smith testified that a version of this alternative plan was presented to the Tiverton Zoning Board in 2004, and the board approved the plan with the stipulation that, if defendant did not prevail in this litigation, access to the Lawrence land would be from Riverside Drive.

**6.** The plaintiffs did not cross-appeal on the question of damages, and we shall not address this ruling.

*Review Authority,* 951 A.2d 497, 502 (R.I. 2008) (quoting *Wickes Asset Management Inc. v. Dupuis,* 679 A.2d 314, 317 (R.I. 1996)). However, we review *de novo* a trial justice's rulings on questions of law. *Grady,* 962 A.2d at 41 (citing *Manchester,* 926 A.2d at 1011).

## Analysis

■ On appeal, defendant assigns error to the trial justice's finding that he does not have a right of access from Sunderland Drive, and he further argues that the trial justice overlooked material evidence that established his right to pass over the Hilley land to reach Sunderland Drive. First, defendant contends that his deed expressly grants him a right of access from Sunderland Drive. Alternatively, he claims that the evidence presented at trial established that he is entitled to an easement by prescription, implication, acquiescence, or necessity to pass over the Hilley land to reach Sunderland Drive.[7] We shall address defendant's arguments *seriatim.*

## Express Easement

■ The defendant argues that his source deed contains an express grant of an easement over the Hilley land because it permits him to use Sunderland Drive, and, he contends, if he cannot access Sunderland Drive from his property, that language would be meaningless. The defendant also contends that, notwithstanding that the boundary lines of Sunderland Drive do not abut his property, the use of dashed lines to demarcate the boundary of Sunderland Drive demonstrates that the lines represent only an approximate location of the right-of-way. Therefore, defendant argues, the language of the deed and the flexible location of the right-of-way establish that he has the right to access his property from Sunderland Drive. We reject this contention.

■ When construing an instrument that purportedly creates an easement, it is this Court's "duty * * * to effectuate the intent of the parties." *Carpenter v. Hanslin,* 900 A.2d 1136, 1147 (R.I. 2006) (citing *Mattos v. Seaton,* 839 A.2d 553, 557 (R.I. 2004)). Nevertheless, "[w]hen the written terms of an agreement are clear and unambiguous, they can be interpreted and applied to the undisputed facts as a matter of law." *Id.* (quoting *Mattos,* 839 A.2d at 558). "Additionally, where terms of [an] easement are clear and unambiguous, neither oral testimony nor extrinsic evidence will be received to explain the nature or extent of the rights acquired." *Id.* (citing *Waterman v. Waterman,* 93 R.I. 344, 349, 175 A.2d 291, 294 (1961)).

■ In the present case, the language in the deed unambiguously declares a right-of-way over that portion of the grantors' land "which lies *within the boundary lines* of a drive [Sunderland Drive] shown upon [the plan]." (Emphasis added.) Thus, the deed specifies that the right-of-way is located within, and constrained by, the boundary lines of Sunderland Drive as they appear on the Sunderland Plan. The defendant's lot does not abut Sunderland Drive on the plan. "The grant of an easement normally will control its location if the location is specified therein." 25 Am. Jur.2d *Easements and Licenses* § 64 at

---

7. On appeal, defendant also argued that he is entitled to an easement over the Hilley land based on a theory of equitable estoppel. However, defendant failed to present this argument to the trial justice, and, "[a]s we have stated many times, this Court's 'raise-or- waive' rule precludes our consideration of an issue that has not been raised and articulated at trial." *Resendes v. Brown,* 966 A.2d 1249, 1254 (R.I. 2009) (quoting *State v. Bido,* 941 A.2d 822, 828 (R.I. 2008)). Therefore, we shall not address this contention.

560 (2004). The fact that the boundary lines are depicted as dashed lines does not establish that the location of the right-of-way is flexible, a concept we do not accept; nor do the dashed lines suggest that the right-of-way is not where it is depicted on the Sunderland Plan. Such an interpretation would render the language in the deed describing the boundaries of the right-of-way as "shown upon a plan" a nullity. This Court has held that the intent of a landowner who subdivides property may be disclosed simply by reference to the recorded plat. *Robidoux v. Pelletier*, 120 R.I. 425, 434, 391 A.2d 1150, 1155 (1978); *see also Kotuby v. Robbins*, 721 A.2d 881, 884 (R.I.1998). Significantly, defendant's deed explicitly refers to the plan in conjunction with the easement over Sunderland Drive, thus eliminating the need for any judicial construction of the dashed lines.

Therefore, because the language in the deed specifically limits the right-of-way to the boundary lines shown on the Sunderland Plan and those lines do not abut the Lawrence land, the trial justice was correct to find that there is no express easement to access the Lawrence land from Sunderland Drive.

### Easement by Implication

The defendant also argues that the trial justice erred in finding that he is not entitled to an easement by implication because, he contends, the evidence demonstrated that at the time the land was subdivided, the grantors intended that the subject parcel could be accessed by way of Sunderland Drive through the Hilley land. Specifically, defendant contends (1) that there was access from the Lawrence land to Sunderland Drive at the time of the severance and (2) that the deeds reveal the grantors' intent to reserve an easement for the benefit of the subject parcel.

"An implied easement is predicated upon the theory that when a person conveys property, he or she includes or intends to include in the conveyance whatever is necessary for the use and the enjoyment of the land retained." *Bovi v. Murray*, 601 A.2d 960, 962 (R.I.1992). This Court previously has held that, when land is divided, the law will imply a grant of "all those continuous and apparent easements which have in fact been used by the owner during the unity, though they have no legal existence as easements." *Catalano v. Woodward*, 617 A.2d 1363, 1367 (R.I. 1992) (quoting *Kenyon v. Nichols*, 1 R.I. 411, 417 (1851)). However, it is incumbent upon the party claiming an easement over the land of another to present clear and convincing evidence of the claim. *Ondis v. City of Woonsocket*, 934 A.2d 799, 803 (R.I. 2007) (citing *Berberian v. Dowd*, 104 R.I. 585, 589–90, 247 A.2d 508, 511 (1968)).

#### a. Aerial Photograph

In the present case, the only evidence of access to the Lawrence land from Sunderland Drive at the time of severance is an aerial photograph taken in 1939 that shows a light-colored rectangle in the area where defendant constructed the driveway. The defendant's reliance on this photograph is misplaced; even if the light-colored area is a driveway, of which we are not convinced, the photograph was taken three years before the creation of the subdivision. Therefore, we cannot agree that the photo supplies clear and convincing evidence that, at the time the subdivision was declared, there was a driveway across the Hilley land.

The defendant claims that the trial justice erroneously overlooked evidence contained in the aerial photograph when she decided this case. This Court previously has stated that a trial justice "need not

engage in extensive analysis and discussion of all the evidence. Even brief findings and conclusions are sufficient if they address and resolve the controlling and essential factual issues in the case." *Donnelly v. Cowsill*, 716 A.2d 742, 747 (R.I. 1998) (quoting *Anderson v. Town of East Greenwich*, 460 A.2d 420, 423 (R.I.1983)). After a review of the record and the trial justice's decision, we are satisfied that she considered the evidence presented by both parties sufficiently in order to resolve the essential questions of fact and that her failure to refer to an aerial photograph taken years before the land was subdivided was not error.

### b. Language in the Deeds

■ In order to establish the intent of the grantors to reserve an easement for the benefit of the Lawrence land, defendant relies on the fact that his deed expressly permits the grantee to use Sunderland Drive and that such language was not included in the deed to lot No. 7, notwithstanding that both lots purportedly have direct access from Riverside Drive. The defendant argues that this disparity demonstrates the grantors' intent that access to the Lawrence land was to be accomplished from Sunderland Drive, while lot No. 7 was limited to Riverside Drive. We disagree.

The defendant seeks a judicial declaration of an easement by implication based on the absence of language in a deed to an unrelated lot in the plan. The defendant suggests that the fact that the grantee of lot No. 7 was not deeded an express right to use Sunderland Drive gives rise to an ambiguity requiring this Court to construe the conveyance documents. This is an exercise in which we decline to engage.

■ The law is well settled that when a property owner subdivides land and sells lots with reference to a plat, the purchasers of those lots are granted easements in the roadways shown on the subdivision plan, whether or not those roads subsequently are dedicated to the public. *Newport Realty, Inc. v. Lynch*, 878 A.2d 1021, 1032 (R.I.2005) (citing *Kotuby*, 721 A.2d at 884). The easement granted to the purchasers is appurtenant to the property; it passes with the conveyance to a subsequent grantee. *Id.* at 1033.

The record discloses that the deeds to the lots in the subdivision were conveyed with reference to the Sunderland Plan. Thus, the purchasers of lot No. 6, the Lawrence land, as well as the purchasers of lot No. 7, the adjacent parcel, were granted easements in Sunderland Drive as a result of this incipient dedication of the roadways set forth in the plan. *See Bitting v. Gray*, 897 A.2d 25, 32 (R.I.2006) (holding that, generally, an easement over roads delineated in a subdivision plan passes with the conveyance of lots when the deeds make reference to the plan). Thus, the fact that the deed to lot No. 7 did not contain the express grant of an easement to use Sunderland Drive is of no moment to the issue before us. Because the deeds to both lots No. 6 and No. 7 referred to the plan, an easement in Sunderland Drive accompanied each conveyance. However, this right-of-way over Sunderland Drive does not give rise to an easement over the Hilley land to access the subject parcel from Sunderland Drive, and therefore the trial justice correctly found that defendant was not entitled to an easement by implication.

### Easement by Prescription

■ The defendant alternatively argues that he is entitled to a prescriptive easement to pass over the Hilley land to reach Sunderland Drive from his property. To establish an easement by prescription, a claimant must show "actual, open, notori-

ous, hostile, and continuous use under a claim of right for at least ten years." *Nardone v. Ritacco*, 936 A.2d 200, 205 (R.I. 2007) (quoting *Stone v. Green Hill Civic Association, Inc.*, 786 A.2d 387, 389 (R.I. 2001)). The claimant must prove each element by clear and satisfactory evidence. *Id.* Determining whether the claimant has met this burden is "an exercise of the [trial justice's] fact-finding power." *Id.*

 The trial justice found to be credible the testimony that the Hilley land was not used for vehicular access to the subject parcel until the Sheas received permission to do so. A trial justice sitting without a jury is uniquely situated to evaluate the credibility of witnesses, and our review of the inferences that he or she draws from a witness's testimony is deferential. *Alpha Omega Construction, Inc. v. Proprietors of Swan Point Cemetery*, 962 A.2d 733, 738 (R.I.2008) (citing *Walton v. Baird*, 433 A.2d 963, 964 (R.I.1981)). We are satisfied that the trial justice did not overlook or misconceive material evidence when she concluded that, other than with respect to the limited circumstance when plaintiffs granted the Sheas permission to traverse their property, there was no vehicular access to the Lawrence land from Sunderland Drive. This finding defeats defendant's claim of a prescriptive easement.

 When permission is granted for a particular use, a later use of the same kind cannot be characterized as adverse. *Stone*, 786 A.2d at 390 (citing *Daniels v. Blake*, 81 R.I. 103, 110, 99 A.2d 7, 11 (1953)). Therefore, because the Sheas' use was by permission from the outset, defendant's initial use was not hostile and could not ripen into a prescriptive easement. A permissive use may become hostile only when "the permission has been withdrawn * * * or [when] events have occurred indicating that the original permission no longer obtained." *Id.* When plaintiffs con-

structed the fence in November 2001, they unequivocally withdrew their previously granted permission to pass over their land. Therefore, defendant's use of the Hilley land did not become hostile until July 2003, when he removed the fence, destroyed the garden, and constructed a driveway; this conduct can be characterized as notorious and aggressive, but it is of no legal significance to this case. Because this suit was filed immediately thereafter, defendant's hostile use did not continue for the ten-year period required for a prescriptive easement. Accordingly, the trial justice correctly held that defendant was not entitled to an easement by prescription.

### Easement by Acquiescence

 The defendant also argues that he established his right to an easement by acquiescence. "Like adverse possession, the doctrine of acquiescence to an observable physical boundary line constitutes a recognized means by which a claimant can gain title to the real estate encompassed by that boundary line, even though another party clearly possesses record title to that land." *Pucino v. Uttley*, 785 A.2d 183, 186 (R.I.2001) (citing *DelSesto v. Unknown Heirs of Lewis*, 754 A.2d 91, 95 (R.I.2000)). "[A] party alleging acquiescence must show that a boundary marker existed and that the parties recognized that boundary for a period equal to that prescribed in the statute of limitations to bar a reentry, or ten years." *Id.* at 186–87 (quoting *Locke v. O'Brien*, 610 A.2d 552, 556 (R.I.1992)). Because there is not a scintilla of evidence in this case to support a finding of an easement by acquiescence, we decline to address that issue, save to uphold the decision of the trial justice finding that defendant failed to establish title to the purported right-of-way between his lot and Sunderland Drive through acquiescence.

### Easement by Necessity

The defendant also claims that he is entitled to an easement by necessity because the steep slope along the westerly boundary of the subject parcel precludes access from Riverside Drive, and, therefore, an easement to use Sunderland Drive is reasonably necessary for the comfortable enjoyment of his property. An easement by necessity "is limited to a factual scenario, in which a single owner partitions land and fails to reserve an express easement in favor of the parcel that has become landlocked as a result of the severance." *Ondis*, 934 A.2d at 806. "[T]he test of necessity is whether the easement is reasonably necessary for the convenient and comfortable enjoyment of the property as it existed when the severance was made." *Nunes v. Meadowbrook Development Co.*, 824 A.2d 421, 425 (R.I.2003) (quoting *Wiesel v. Smira*, 49 R.I. 246, 250, 142 A. 148, 150 (1928)). A party is not entitled to an easement by necessity if "a substitute [can] be procured without unreasonable trouble or expense." *Id.* The existence of an easement by necessity is a question of fact. *Id.*

The land surveyors and engineer all testified that it was feasible to construct a driveway on the westerly border of the Lawrence land for direct access to Riverside Drive, but that doing so would be more burdensome and expensive than building a driveway across the Hilley land to reach Sunderland Drive.[8] The trial justice found that the "mere suggestion that [building a driveway to Riverside Drive] is 'more expensive' by some unspecified sum" was insufficient to support a finding of necessity. We agree. The testimony established that a driveway to Riverside Drive could be constructed, and the defendant failed to provide any evidence that the effort would be unreasonably expensive. Accordingly, we affirm the finding of the trial justice that the defendant is not entitled to an easement by necessity to reach Sunderland Drive.

### Conclusion

For the foregoing reasons, we affirm the judgment of the Superior Court, to which the papers in this case may be remanded.

---

8. The evidence revealed that a plan that provides access to the subject parcel from Riverside Drive already has been drafted and has been approved by the Tiverton Zoning Board.