DECISION
Before this Court is a Complaint filed by Daniel and Karen Curran to establish their rights to enter upon the land of their neighbor for the purpose of maintaining a stone wall that stands between their respective pieces of property.
 FACTS AND TRAVEL
Daniel and Karen Curran own property located at 2 Westport Harbor Road in Little Compton, more particularly described as Assessor's Plat 43, Lot 25. Defendants own the property at 640 Adamsville Road in Little Compton, more particularly described as Assessor's Plat 43, Lot 28, directly to the east of Plaintiffs' property. A stone wall stands between the two lots. Commencing on the eastern face of the stone wall and spanning eastward is a grassy strip of land, approximately three feet in width and bounded on the west by Defendants' driveway. It was Mr. Curran's opinion, supported by that of an expert retained by him, that the roots of certain trees on Defendants' property are spreading under the stone wall and threatening the integrity of the stone wall. Mr. Curran notified Eve Leach of his intention to remove the offending trees and shrubbery to maintain the integrity of the stone wall. *Page 2 
When Mr. Curran communicated this intention to Ms. Leach, Mr. Curran received a letter from her attorney indicating that Mr. Curran was not to remove the trees. Plaintiffs filed their Complaint on August 29, 2007, and filed an Amended Complaint on December 6, 2007. In their First Amended Complaint, Plaintiffs urge this Court to find that the Defendants have acquiesced to Plaintiffs' ownership of the three-foot strip; that Plaintiffs have obtained an easement appurtenant over the three-foot strip, either by prescription or by implication; that Plaintiffs have adversely possessed the three-foot strip; that Plaintiffs have the right to maintain the stone wall; that Defendants must pay for the removal of the trees; and/or that injunctive relief be granted to allow Plaintiffs to enter onto Defendants' property to remove the trees and to maintain the stone wall.
 STANDARD OF REVIEW
In a trial conducted without a jury, the trial justice acts as the trier of fact as well as of law. Hood v. Hawkins,478 A.2d 181, 184 (R.I. 1984). "Consequently, he weighs and considers the evidence, passes upon the credibility of the witnesses, and draws the proper inferences." Id. "In all actions tried upon the facts without a jury . . . the court shall find the facts specially and state separately its conclusions of law thereon . . ." Super. R. Civ. P. 52(a). "It is important to note that the trial justice need not engage in extensive analysis to comply with this requirement." Nardone v. Ritacco,936 A.2d 200, 206 (R.I. 2007) (quoting White v. LeClerc,468 A.2d 289, 290 (R.I. 1983)). Rather, "brief findings will suffice as long as they address and resolve the controlling factual and legal issues." Id. *Page 3 
 ANALYSIS
Daniel Curran testified at trial that while he shared the expense of maintaining the stone wall with his former neighbor, George Leach (now deceased), neither of them considered the wall to be jointly owned. Mr. Curran's uncontested testimony indicates that since he purchased his property in 1978, he has performed maintenance not only on the stone wall itself but also on the three-foot strip of land east of the stone wall — that strip being on the Leach property. Such maintenance has included repairing the stone wall itself, burning tent caterpillars, and cutting vegetation, trees, lilacs and bittersweet vines on the east face of the wall. For a brief period about six years prior, Mr. Curran also hired landscapers once per month to maintain the strip of land. Mr. Curran testified that he never asked for, nor received, permission to enter his neighbors' land. All of this maintenance work was performed during daylight hours, but Mr. Curran does not know if any member of the Leach family ever observed him on their property. Mr. Curran indicated that roots from two trees growing on the Leach property were growing underneath the wall, causing it to heave. As a result, Mr. Curran believes it necessary to remove the offending trees.
"To establish an easement by prescription, a claimant must show `actual, open, notorious, hostile, and continuous use under a claim of right for at least ten years.'" Hilley v. Lawrence,972 A.2d 643, 651-52 (R.I. 2009) (quoting Nardone v.Ritacco, 936 A.2d 200, 205 (R.I. 2007)). Each element must be proven by "clear and satisfactory evidence." Id. at 652. "Determining whether the claimant has met this burden is an exercise of the [trial justice's] fact-finding power."Id. (citations omitted). Those elements are measured by the same rubric as they are for adverse possession; only *Page 4 
exclusivity is not required. Gardner v. Baird,871 A.2d 949, 953 (R.I. 2005). See also Reitsma v. PascoagReservoir Dam, LLC, 774 A.2d 826, 831 (R.I. 2001) ("one who claims an easement by prescription has the burden of establishing [the elements] as required by § 34-7-1 [the statute defining adverse possession]."). "Furthermore, although each element must be established by clear and convincing evidence, . . . `[n]o particular act to establish an intention to claim ownership is required. It is sufficient if one goes upon the land openly and uses it adversely to the true owner, the owner being chargeable with knowledge of what is done openly on his land.'" Id. (quoting Burke-TarrCo. v. Ferland Corp., 742 A.2d 1014, 1020 (R.I. 1999)). "In establishing hostility and possession under a claim of right, the pertinent inquiry centers on the claimants' objective manifestations of adverse use rather than on the claimants' knowledge that they lacked colorable legal title . . . [E]ven when claimants know that they are nothing more than black-hearted trespassers, they can still adversely possess the property in question under a claim of right." Tavares v. Beck, 814 A.2d 346, 351 (R.I. 2003).
In the case at bar, Mr. Curran has established that since he purchased his property in 1978, he entered onto a three-foot strip of land on his neighbors' property to perform maintenance that would ensure the longevity and integrity of the stone wall. He certainly did so openly and notoriously, as all of the work he either commissioned or performed was done during the daytime. His use was actual and hostile, having never received permission from the landowner to enter and perform the maintenance to protect the wall. Mr. Curran well exceeded the requisite ten year period, having performed the maintenance since his purchase of his property over thirty years ago. Mr. Curran's entry onto the property and the maintenance he performed were also continuous. It is apparent *Page 5 
from Mr. Curran's testimony that he regularly and consistently entered onto the Leach property as necessary to protect the integrity of the stone wall.[1]
"[A]n easement is defined as: `an interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose . . .'"Rhode Island Econ. Dev. Corp. v. The Parking Co., L.P.,892 A.2d 87, 107 (R.I. 2006) (quoting Black's Law Dictionary 548 (8th ed. 2004)). Easements come in two varieties — `appurtenant' and `in gross.' McAusland v. Carrier,880 A.2d 861, 863 (R.I. 2005). An easement appurtenant is for the benefit of a dominant estate, while an easement in gross is for the direct benefit of an individual. Id. An easement in gross does not pass with the land, while an easement appurtenant "conveys a good and rightful title forever." Id. (quotingGreenwood v. Rahill,122 R.I. 759, 763, 412 A.2d 228, 230 (1980)). When a claimant meets his burden of showing an easement by prescription, "a presumption arises in favor of an easement being appurtenant rather than an easement in gross."Id. at 863-64 (internal citations omitted). Here, the easement is clearly an easement appurtenant, inuring to the benefit of the dominant estate — the land owned by Mr. Curran. Mr. Curran entered onto the land not to secure a personal benefit to himself, but to maintain the stone wall that serves as a dividing line between the two parcels. *Page 6 
Plaintiffs argued that in order to maintain the integrity of the stone wall, the two offending trees must be removed. Defendants countered that the extent of the maintenance this Court should require is that the roots be cut, but the trees themselves should otherwise be left intact. Defendants' position is supported by Gregory DeMello, a stone mason with experience in stone wall maintenance and repair. Mr. DeMello proposed that the wall be taken down, the roots be cut, and the wall subsequently repaired. This conclusion was rebutted by Earl Wordell, Jr., an expert witness called by Plaintiffs. Mr. Wordell has been a stone mason for approximately twenty-six years, and he has also been an arborist licensed by the State of Rhode Island for approximately twelve years. Mr. Wordell agreed that the wall was being negatively impacted by the root system. According to Mr. Wordell, the trees needed to be removed entirely, because trimming the roots would weaken the trees and cause them to topple over, likely onto Mr. Curran's home. According to this testimony, this Court finds that the two trees whose root systems are threatening the integrity and stability of the stone wall must be removed. This Court also finds, as articulated above, that Plaintiffs' property is the beneficiary of an easement by prescription to enter onto the Leach property for the purpose of maintaining the stone wall. This easement encompasses the right to remove any trees whose root systems substantially threaten the integrity of the stone wall, where the root systems cannot safely be trimmed to protect the wall.
Plaintiffs have also requested that this Court make a finding regarding the boundary line between the two pieces of property at issue. Specifically, Plaintiffs ask this Court to find that the boundary line lies on the eastern face of the stone wall, not in the center of the wall as Defendants contend. Based on the Court's discussion supra, this *Page 7 
determination need not be made at this time. Whether Plaintiffs' property rights extend inches beyond the center of the stone wall is not germane to the issue of whether Plaintiffs have acquired an easement by prescription to enter Defendants' land to maintain the stone wall.
To the extent not expressly ruled on, all other unresolved claims and/or prayers for relief raised in this litigation are denied.
 CONCLUSION
Based upon the foregoing, this Court holds that the property located at 2 Westport Harbor Road in Little Compton (more particularly described as Assessor's Plat 43, Lot 25) is the dominant estate to an easement appurtenant to enter onto the neighboring property located at 640 Adamsville Road in Little Compton (more particularly described as Assessor's Plat 43, Lot 28). The scope of this easement is defined by its purpose — to maintain the stone wall that stands between the properties. This easement encompasses Plaintiffs' right to remove the trees they have complained of, because their root systems cannot be safely trimmed.
Counsel for the prevailing party shall submit a Judgment and Order consistent with this Decision.
[1] Plaintiffs' First Amended Complaint also contains an adverse possession claim. However, Plaintiffs have not put forward any evidence that their use of the three-foot strip was exclusive of the true owner. The same is true with regard to Plaintiffs' claim of acquiescence. There has been no demonstration that the parties considered the eastern face of the stone wall as the boundary line between the parcels as would be required in order to place the line there by acquiescence. See Locke v. O'Brien,610 A.2d 552, 556 (R.I. 1992). While there was testimony elicited at trial that Mr. Curran maintained the stone wall in its entirety, there is also testimony that Mr. Curran at one point shared the expense of the repairs with George Leach.