DECISION
This matter was tried before the Court without a jury on October 5, 2011, on D. Costa Electric Co., L.L.C.'s (hereinafter "D. Costa Electric") Complaint for outstanding invoices due from Defendant, SMD Realty/Construction, Inc. (hereinafter "SMD Realty"), on book account. This Court has jurisdiction pursuant to R.I. Gen. Laws 1956 § 8-2-13 and renders its decision in accordance with Rule 52 of the Rhode Island Superior Court Rules of Civil Procedure.
In its original answer, Defendant asserted, inter alia, the affirmative defenses of waiver, estoppel, and accord and satisfaction. Following the conclusion of the testimony and in conjunction with its post-trial memorandum, Defendant moved to amend its answer to include the affirmative defense of set-off to conform to the evidence adduced at trial. Plaintiff objected to Defendant's Motion to Amend Answer.
For the reasons that follow, Defendant's Motion to Amend Answer is granted to include the affirmative defense of set-off, and Plaintiffs request for judgment in the amount of $11,993.00 is also granted. *Page 2 
 I Facts
Having heard the testimony presented by the parties and examined the exhibits admitted into evidence, the Court makes the following findings of fact.
Plaintiff presented the testimony of Dan Costa (hereinafter "Costa"), the manager, owner and sole proprietor of D. Costa Electric. Costa has been a licensed electrician in three states, including Rhode Island, since 2000. D. Costa Electric provides electrical services to contractors, businesses, subcontractors and homeowners, and its business is derived largely from referrals and advertisements.
According to Costa, billing for work performed by D. Costa Electric begins with handwritten notes taken by Costa before and during the work. Costa testified that he compiles those notes when the work is completed, the notes are then put into a detailed billing system, and an invoice is generated that includes the hours worked, the nature of the work performed, an itemization of materials and a total cost. Costa's handwritten notes are discarded once the invoice is generated. Costa further testified that because he is a "one man show," the dates of the work performed generally may not line up with the invoice numbers generated from Plaintiffs detailed billing system. The date on the printed invoice would correspond with the date that the invoice itself was generated, but not necessarily the date that the work was performed. Indeed, Costa stated that there could be a month or two delay between the date the electrical work was completed and the invoice date.
The relationship between the parties began prior to Costa forming the Plaintiff business entity. Costa had previously been employed at one J J Electrical Contractors, LLC and performed electrical work for Defendant in the course of that employment. In *Page 3 
2002 or 2003, after D. Costa Electric had been formed, Costa would receive cell phone calls from Steven Davis (hereinafter "Davis"), known by Costa to be the principal of SMD Realty, requesting that electrical services be performed on jobs that SMD Realty had been hired to do. Neither proposals nor contracts were regularly exchanged between Costa and Davis or their respective entities; rather, Costa would report to the location of the job and perform the work. Costa testified that over the years he worked on between ten (10) and twenty (20) jobs for SMD Realty in this manner, the last job being in or about 2007 or 2008.
Plaintiff now complains that Defendant did not pay for all the work performed by D. Costa Electric. Specifically, Costa testified that ten invoices, collectively marked in full as Plaintiffs Exhibit 1, remain unpaid for a total of $11,993.00 due and outstanding. The invoices are dated from April 7, 2006 through September 10, 2006. Two of the ten (10) invoices reflect work that was performed on an addition or new construction that required an electrical permit application filed with the municipality in which the project is situated; those two (2) electrical permits were collectively presented as Plaintiffs Exhibit 2 in full.
The evidence before the Court and Costa's testimony reveal that on each of the ten (10) invoices, the "shipping address" listed is SMD Realty's office address. With the exception of two (2) of the invoices in Exhibit 1, the "billing address" on each of the invoices is listed as "SMD Construction," with the street address listed as the location where the work was performed. Costa testified that invoice # 271, which does not include an address where the work was performed, was likely a small job completed at a small beach house Davis purchased in the Oakland Beach section of Warwick. Indeed, *Page 4 
the work performed was for just one hour and the majority of the total $125 bill is for the service call "to go and check out the problem [on] 4-7-06." Costa recalled that the other invoice with an unspecified address, invoice # 320, was for work performed at Johnson Wales in Seekonk, Massachusetts, as evidenced by the commercial rate for labor listed on that invoice.
Defendant presented the testimony of Davis, the president of SMD Realty, and Robert Volpe, the current shop supervisor at Steven Davis Automotive Inc. d/b/a Stevie D's Auto Sales and Service (hereinafter "Stevie D's Auto"). SMD Realty has been in existence for eighteen (18) years and performs mostly residential construction work, including new construction, additions, decks and major renovations; SMD Realty also performs occasional construction services for commercial clients. Davis testified that he also serves as the president of Stevie D's Auto, a corporate entity in the business of automobile repairs and sales. Stevie D's Auto is not a party to this civil action.
Davis testified that his automotive repair business, Stevie D's Auto, performed services on Costa's personal vehicle, a Durango, and on Costa's business van. He also testified that a personal watercraft owned by Costa, known as a Wave Runner, was repaired at his automotive repair business and stored there for over two (2) years. According to Davis, a repair bill for the Wave Runner was generated and sent to Costa on August 13, 2005, as reflected in Defendant's Exhibits B and C in full, totaling $1,876.99 in labor, parts and tax. Additionally, Davis testified that the invoice marked as Defendant's Exhibit D in full was for storage fees for the Wave Runner from August 23, 2005 through September 3, 2007, totaling $17,640, and was delivered to Costa on September 3, 2007, when Costa came to Stevie D's Auto to pick up the Wave Runner. *Page 5 
There was no evidence presented that demonstrates that Costa and/or D. Costa Electric received goods or services from SMD Realty for which Costa and/or D. Costa Electric did not pay.
Davis maintains that he and Costa bartered services, and that the invoices at issue in this suit were subject to that barter system. In his words, Davis "would do something for [someone] for free, and [that someone] would do something for [Davis] for some value, and one would wash off the other." Davis testified, and Volpe confirmed, that this bartering system was also used with other contractors. Davis stated that on his end he would usually provide automotive services, and that Davis "helps other people more than [he] need[s] the help." Documentation on such bartered services was not introduced at trial; rather, Davis testified that the parties to this bartering could "go back and forth for several years" when they would "just keep working against each other" and an invoice would not be created until they settled up at the end of this bartering exercise.
As to the bartered services between Davis and Costa, Davis testified — but did not introduce as evidence — that there was an "informal folder system" in place where "notations" were made which accounted for bartered services, including automotive repairs to Costa's vehicles. Davis recalled that four (4) tires and an alternator job were provided to Costa. Davis further estimated that the tires were approximately $1000 in value, and an alternator job would have a value of approximately $350. Davis further stated that he would keep an invoice as well if the bartered service was valued over $1000. Because the repair services and storage fees for the Wave Runner each amounted to over $1000, Davis had an invoice issued to Costa. According to Davis, the invoices were issued and delivered to Costa for the Wave Runner, but Costa was never asked to *Page 6 
pay those invoices because Davis considered those services to be subject to the barter system.
With respect to the invoices included in Plaintiffs Exhibit 1, Davis testified that he never received these invoices until they were attached to correspondence from Plaintiffs counsel. Davis testified that he did not believe that any sums were outstanding to Plaintiff as Davis and Costa were "just about even" for their bartered services.
In an Affidavit dated August 26, 2010, and marked as Plaintiffs Exhibit 3 in full, Davis contested each of the ten invoices that are the subject of Plaintiffs Complaint. However, Davis's testimony before the Court contradicts his sworn statements in his Affidavit. In his Affidavit, Davis stated that invoices # 214, # 269, # 270 and # 292 were paid directly by the property owners to Plaintiff. In his in-court testimony, however, he states that invoice # 214 was "correct"; that with the exception of not having an agreement to pay Plaintiff to go check out a problem, invoices # 269 and # 292 were "okay"; and that he simply doesn't recall ever doing work on the property address listed on invoice # 270. In his Affidavit, Davis stated that he has no recollection of having performed any work on properties listed on invoices # 257 and # 294; yet he testified before this Court that those invoices # 257 and # 294 were "correct." As to the two invoices without property addresses listed, invoices # 271 and # 320, Davis's Affidavit avers that he has no way of knowing whether those invoices relate to any legitimate work performed by D. Costa Electric; yet he testified before the Court that # 271 was "correct" and, with the exception of a $200 charge for emergency services, invoice #320 was "okay." Finally, with respect to both invoices # 268 and # 583, Davis's Affidavit discloses that each of these particular invoices "was the subject of an agreement between *Page 7 
the parties wherein Plaintiff was paid in full for the services claimed therein by Steven M. Davis Automotive, Inc. performing substantial repair services" to Plaintiff's motor vehicle and Wave Runner and for storage of the Wave Runner for more than two (2) years. The Affidavit further states that the amount for the motor vehicle repairs was approximately equal to the amount set forth in invoice # 268, and that the Wave Runner repairs and storage "exceeded, but was approximately equal to, the amount of" invoice # 583. By comparison, Davis's testimony before this Court challenged the amount set forth in one line item in # 268 valued at $1600, and challenged the quality of the work performed at the property set forth on invoice #583 wherein the customer complained that another electrician had to come to repair certain receptacles and/or outlets. Davis was unable to testify to the value of the corrective work that needed to be performed on the property listed on invoice # 583.
 II Presentation of Witnesses
Costa was the only witnesses called in Plaintiff's case-in-chief. Costa was a credible witness on direct examination. As a "one man show," he recited how and when he generates invoices for work performed, often with month-long delays between the work performed and generating an invoice. On cross-examination, he was questioned extensively about the dates of work invoices, the sequence in numbers and the time the work was performed. Contrary to the efforts to impeach his credibility and the invoices that are the subject of this suit, the Court finds Costa's explanation of the gaps in invoice dates and/or sequential invoice numbers to be both understandable and believable.
Costa was also cross-examined on whether he engaged in bartering with Davis, whether he received and paid an invoice for auto repairs done at Stevie D's Auto, *Page 8 
whether he received payments from Davis by check to Costa directly as opposed to payments to D. Costa Electric, and why the Wave Runner remained at Stevie D's Auto for so long. On each of these subjects, Costa was unwavering in his testimony, but the first two areas did give the Court pause as to whether Costa's testimony in its entirety should be accepted. While Costa testified that he did not recall engaging in any bartering with Davis in 2006, he also testified that in the past he had picked up his vehicles after being repaired at Stevie D's Auto and he was never presented with an invoice or asked to pay money for such services. Further, he testified that he performed electrical work for Davis in Davis's office and in Davis's automotive shop, and that Costa never charged Davis for such services. While the evidence did not specifically establish that the automotive repairs performed for the benefit of Costa and electrical services performed by Costa took place in 2006, the reasonable inference is that there were some services that were bartered as between D. Costa Electric and Davis and between Costa and Stevie D's Auto, regardless of whether the services were rendered in calendar year 2006 as Costa was asked.
Defendant's main witness was Davis. This witness presented self-serving statements, often supported by unidentified documents or evidence which he had at his office but not in Court with him. During Davis's testimony, it became evident to the Court that the parties had not engaged in any meaningful discovery and the witnesses' testimony was the first opportunity to confront the witnesses with their opposing claims and defenses.
In essence, Davis's testimony centered on what he described as a loose barter system which was not supported in any way by documentary evidence which he testified *Page 9 
existed in "notations" in "folders" that he maintained in order to keep track of the "back and forth" of bartered services. Without the benefit of viewing any of those "notations" or "folders" to assess the veracity of this so-called barter system, the Court is left with the Davis's courtroom testimony and few exhibits on Defendant's behalf. The Court has before it Stevie D's Auto's repair bill for the Wave Runner dated August 13, 2005 (before the 2006 electrical work that is the subject of the ten (10) invoices presented by Plaintiff in support of its Complaint) and Stevie D's Auto's invoice for storage of that Wave Runner, which allegedly was presented to Costa on September 3, 2007, and which alone far exceeds the total costs of Plaintiff s invoices. With such substantial differences in moneys allegedly owed per the "barter system" as Davis claims, the Court finds it unusual that such "notations" and "folders" would not be introduced as evidence, or that a separate claim for moneys owed by Costa to Stevie D's Auto, a separate and distinct entity from Defendant, was not filed and/or consolidated with the within action.
With respect to the inconsistencies between Davis's Affidavit and his courtroom testimony discussed supra, Davis claimed that in Court he was simply commenting on whether the invoices were "appropriate" and not whether they "were due." Davis testified on direct examination that the invoices were, with few exceptions, uncontested, but later was confronted on cross-examination that he had taken an inconsistent position as to each invoice in his sworn Affidavit. This Court finds Davis's justification for the inconsistencies is disingenuous. Having considered all of the testimony and evidence presented and thelack of evidence presented, this Court further finds that that Davis not only plays fast and loose with his corporate bookkeeping, but also plays fast and loose with the facts as is expedient. *Page 10 
Defendant also presented the testimony of the current shop supervisor at Stevie D's Auto, Robert Volpe. Volpe has been employed by Stevie D's Auto since 2005 and became the shop supervisor in or about 2007 or 2008. He appeared to be indifferent to testifying in this action. Volpe testified that Davis engages in bartering services provided by Stevie D's Auto. Prior to his promotion to shop supervisor, Volpe testified that when a vehicle was repaired that was subject to a barter agreement, Davis would advise Volpe to "let it go" and an invoice for services would not be generated. Volpe was not asked whether he was aware of notations in any folder that would track bartered services. Since his promotion, Volpe now requires that there be an invoice generated for barter work that is performed. While Volpe appeared truthful (albeit indifferent), his testimony is of little value to the Court as it merely justifies the non-existence of records for a corporate entity prior to 2007 or 2008 that is not a party to this action.
 III Standard of Review
Rule 52(a) of the Superior Court Rules of Civil Procedure provides that "[i]n all actions tried upon the facts without a jury . . . the court shall find the facts specially and state separately its conclusions of law thereon." Super. R. Civ. P. 52(a). In a non-jury trial, the trial justice sits as the trier of fact as well as of law.Hood v. Hawkins, 478 A.2d 181, 184 (R.I. 1984). "Consequently, he [or she] weighs and considers the evidence, passes upon the credibility of the witnesses, and draws proper inferences." Id. A trial justice's findings of fact will not be disturbed unless such findings are clearly erroneous, the trial justice misconceived or overlooked material evidence, or unless the decision fails to do substantial justice between the parties. Opella v. Opella,896 A.2d 714, 718 (R.I. 2006) (quoting Bogosian v. Bederman,823 A.2d 1117, 1120 (R.I. 2003)). While the trial *Page 11 
justice's analysis of the evidence and findings need not be exhaustive or "categorically accept or reject each piece of evidence," the trial justice's decision must "reasonably indicate[] that [she] exercised [her] independent judgment in passing on the weight of the testimony and credibility of the witnesses." Notarantonio v. Notarantonio,941 A.2d 138, 144 (R.I. 2008) (quoting McBurney v. Roszknowski,875 A.2d 428, 436 (R.I. 2005)). Further, although the trial justice is required to make specific findings of fact, "[e]ven brief findings and conclusions are sufficient if they address and resolve the controlling and essential factual issues in the case." Hilley v. Lawrence,972 A.2d 643, 651 (R.I. 2009) (quoting Donnelly v. Cowsill,716 A.2d 742, 747 (R.I. 1998)).
 IV Analysis A D. Costa Electric Has Sustained Its Burden of Proof onIts Complaint for Sums Due on Book Account
The credible testimony and evidence before this Court clearly establishes that Plaintiff performed electrical services for the benefit of Defendant and Defendant did not pay the amounts set forth in those invoices. In light of the inconsistencies between Davis's testimony before the Court and sworn statements in his Affidavit, Defendant's attempt to question the fairness, reasonableness and quality of the services and cost of such services is unavailing. Moreover, this Court does not countenance the argument that the invoices were recently fabricated. Costa credibly testified to the manner in which Plaintiff's invoices are generated, and the Court rejects the nefarious intent that Defendant would attribute to a sole proprietor such as Costa in discarding his handwritten notes once invoices are generated. Simply put, this Court finds that D. Costa Electric has *Page 12 
satisfied its burden by a preponderance of the evidence that $11,993.00 is a fair and reasonable price for the services rendered and is due from SMD Realty on book account.
 B SMD Realty Has Failed to Sustain Its Burden of Proof on Original Affirmative Defenses
In raising an affirmative defense, a defendant is obliged to demonstrate that it is entitled to judgment in its favor as a result of such defense. In its Post-Trial Memorandum and with respect to the affirmative defenses in its original Answer, Defendant argues that the affirmative defense of accord and satisfaction is apropos. Defendant has failed to argue how its original affirmative defenses of waiver and estoppel, or any other affirmative defenses as originally pled, apply to the facts of this case. Accordingly, Defendant has failed to sustain its burden of proving that Plaintiff waived its right to be paid on its book account or that Plaintiff is estopped from seeking payment on its book account.
With regard to the affirmative defense of accord and satisfaction, the common law doctrine of accord and satisfaction, as adopted by Rhode Island courts, was discussed recently in Soares v. Langlois,934 A.2d 806 (R.I. 2007). That decision reads in pertinent part:
 We have said that the doctrine of accord and satisfaction provides that "when two parties agree to give and accept something in satisfaction of a right of action which one has against the other, and that agreement is performed, the right of action is subsequently extinguished." ADP Marshall, Inc. v. Brown University, 784 A.2d 309, 313 (R.I. 2001). For an accord and satisfaction to be binding, "[t]here must be accompanying expressions sufficient to make the creditor understand, or to make it unreasonable for the creditor not to understand, that the performance is offered to him as full satisfaction of his claim and not otherwise." Weaver v. American Power Conversion Corp., 863 A.2d 193, 198 (R.I. 2004) (quoting 6 Corbin on Contracts, § 1277 at 118 (1962)). When determining whether an *Page 13 
accord and satisfaction exists the intention of the parties must be "determined by the usual processes of interpretation, implication and construction." Id. (quoting 6 Corbin on Contracts, § 1293 at 190). Furthermore, the party asserting the affirmative defense of accord and satisfaction must show that an agreement exists and that the "agreement was accepted in exchange for refusal to press a right of action." Kottis v. Cerilli, 612 A.2d 665 (R.I. 1992). Soares, 934 A.2d at 810.
Here, Defendant would have this Court believe that because "Plaintiff actually received remuneration which exceeded his claimed debt," then Defendant's affirmative defense of accord and satisfaction bars Plaintiff's recovery. (Def.'s Post-Trial Memo, at 3.) However, by Davis's own testimony, even if it were credible, the bartering went back and forth, sometimes for years. With such "back and forth" performances and acceptances, a right of action is not subsequently extinguished upon the agreement being performed. Rather, according to Davis, the values of the performances and rights of actions "would just keep working against each other," thereby making it somewhat arbitrary as to the point in time when the right of action would ultimately be extinguished. There was no testimony whatsoever as to the rights of the parties if one party was dissatisfied by the so-called barter system. Even if this "back and forth" agreement was supported by credible documentary and/or testimonial evidence, this Court is not satisfied that D. Costa Electric agreed that its right of action on book account was forever extinguished, or that Plaintiff accepted services of Stevie D'sAuto in exchange for its refusal to press a right of action on Plaintiff's book account. Accordingly, Defendant has failed to sustain its burden in establishing the affirmative defense of accord and satisfaction. *Page 14 
 C Defendant's Additional Affirmative Defense ofSet-Off May Conform to the Evidence, But Defendant Is Not Entitled to Set-Off
Defendant moves pursuant to Rule 15(b) to include the affirmative defense of set-off to conform to the evidence presented at trial. Rule 15(b) of the Superior Court Rules of Civil Procedure provides as follows:
 (b) Amendments to Conform to the Evidence.
When issues raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time. . . . If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely. . . . Super. R. Civ. P. 15(b).
The claims of set-off were presented at trial vis- À -vis Davis's contention that there existed a so-called barter system. Plaintiff did not object to such evidence at trial, and indeed was prepared to address the alleged barter system as demonstrated by the cross-examination of Davis on his sworn Affidavit, marked in full as Plaintiffs Exhibit 3, wherein he referred to the alleged agreement to exchange electrical services for car repairs and Wave Runner repairs and storage. (Pl.'s Ex. 3, ¶¶ 7-8.) As leave to amend is to be freely given under Rule 15(b) if there was an objection as well as under Rule 15(a) during the pretrial stage of litigation, and as there was no objection by Plaintiff to Defendant's evidence through which it attempts to prove set-off, this Court will allow the amendment at this juncture.
Turning, then, to the evidence before the Court, the question becomes whether SMD Realty has a right of set-off as against D. Costa Electric. Davis's evidence attempted to establish that Stevie D's Auto had a valid right of set-off as against Costa *Page 15 
and/or D. Costa Electric, but Stevie D's Auto is not a party to this action. To determine if Defendant's affirmative defense of set-off holds water, this Court must start with an analysis of general principles of corporate law.
A corporate entity should be disregarded only when there is evidence of deception, fraud or other wrongdoing. See R B ElectricCo., Inc. v. Amco Construction Co., Inc.,471 A.2d 1351, 1354 (R.I. 1984) (citing United TransitCo. v. Nunes, 99 R.I. 501, 508, 209 A.2d 215, 219 (1956);Vennerbeck Clase Co. v. Juergens Jewelry Co.,53 R.I. 135, 138-39, 164 A. 509, 510-11 (1933)). This Court must also consider if'"[a]dherence to the principle of [the corporations'] separate existence would, under the circumstances, result in injustice.'" Id. (quoting Muirhead v. Fairlawn Enterprises,Inc., 72 R.I. 163, 172-73, 48 A.2d 414, 419 (1946)). `"The mere fact that two corporations are owned and operated by the same individual, without more, is not sufficient to justify a disregard of corporate entities.'" Id. at 1354-55 (quoting Custer Builders,Inc. v. Quaker Heritage, Inc.,41 A.D.2d 448, 451, 344 N.Y.S.2d 606, 609 (1973)). Similarly, `"[t]he mere fact that a person holds an office in two corporations that may be dealing with each other and that have offices in the same building, without more, is not enough to make them identical in contemplation of law.'" Id. at 1355 (quoting Stratford CreditCorp. v. Berman, 73 R.I. 247, 252, 54 A.2d 404, 407 (1947)).
Here, Plaintiff does not seek to pierce the corporate veil and have Davis or Stevie D's Auto liable for the debts of SMD Realty. Rather, it is Davis that impliedly urges the Court to disregard the corporate entities and to find that SMD Realty is entitled to a set-off for a debt due to Stevie D's Auto. Understandably, Davis has not ventured into a showing that the two corporations for which he serves as President engaged in deception, *Page 16 
fraud or other wrongdoing, nor has he demonstrated that it would be unjust to adhere to the principles of separate corporate existence. If there is any claim that Stevie D's Auto has against Costa or D. Costa Electric for moneys due on book account or otherwise, Stevie D's Auto is free to pursue those causes of action, therefore there is no injustice in adhering to the principles of separate corporate identities of SMD Realty and Stevie D's Auto.
On the facts before the Court, there is no basis for disregarding the separate corporate entities of SMD Realty and Stevie D's Auto, and therefore SMD Realty is not entitled to set-off for any services rendered by Stevie D's Auto to Costa and/or D. Costa Electric.
 V Conclusion
Based on the testimony, evidence and memoranda submitted and for the reasons stated above, this Court finds that Defendant is liable to Plaintiff on book account, and Plaintiff is entitled to damages in the amount of $11,993.00. Plaintiff is also entitled to costs as well as prejudgment interest pursuant to G. L. 1956 § 9-21-10.
Defense counsel shall submit an Order granting the Motion to Amend Answer. Plaintiffs counsel shall submit an appropriate judgment in accordance with this decision. *Page 1