Damaso HERNANDEZ

v.

JS PALLET CO., INC.

No. 2011–16–Appeal.

Supreme Court of Rhode Island.

April 12, 2012.

Tricia A. Quest, Esq., Cranston, for Plaintiff.

Christopher A. Murphy, Esq., Warwick, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on February 29, 2012, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. This case arose when the plaintiff, Damaso Hernandez (Hernandez or plaintiff), a diesel mechanic, brought suit against his former employer, the defendant, JS Pallet Co., Inc. (JS Pallet or defendant), for dam-ages to the plaintiff's tools that allegedly occurred after the defendant fired him. A Superior Court bench trial culminated in a judgment in favor of the plaintiff for $7,360 in damages. The defendant appeals the judgment and asserts that the trial justice erred by: (1) denying his motion for judgment as a matter of law; (2) permitting the testimony of a witness who was not disclosed in discovery; and (3) erroneously calculating the damages based on the tools' value to the plaintiff, rather than their fair market value. Having carefully reviewed the memoranda submitted by the parties and the arguments of counsel, we are satisfied that cause has not been shown; thus, the appeal may be decided at this time. For the reasons elucidated below, we affirm the judgment of the Superior Court.

### Facts and Travel

We glean the following facts from the evidence produced at trial, including the testimony of Hernandez. Before he was terminated, Hernandez worked for JS Pallet as a diesel mechanic. When plaintiff began working for defendant in June 2004, he was required to supply his own tools, as is the industry custom. The defendant provided plaintiff with a metal storage cage within the workplace to store his tools; plaintiff furnished the lock and had the only key. Hernandez testified that he owned and stored in the cage two tool boxes and "[t]ools, shop equipment, jacks and all kind[s] of truck repair equipment" that he estimated was worth $50,000. In November 2004, JS Pallet informed plaintiff that he was fired; it is the events occurring in the aftermath of Hernandez's termination that give rise to this suit.

On November 15, 2004, at approximately 5:30 a.m., Hernandez received a phone call from Carlos DaSilva (DaSilva), the owner of JS Pallet, notifying him that his employment had been terminated and that he

should not report to work. The plaintiff asked DaSilva about retrieving his tools, intending to utilize the trailer he had built specifically for transporting his tools. The defendant told him that the tools were being delivered to his home; whereupon plaintiff looked out of his window and saw one of defendant's trucks parked outside of his residence.[1]

The plaintiff asked to see his tools and thereupon observed defendant's employees open the liftgate of the truck, causing several items to fall out of the truck and land on the ground. According to plaintiff, the smaller tool box was lying in the bed of the truck, the drawers of the larger tool box were open, and there were tools scattered in the truck and on the ground. After speaking with the two employees, it became apparent that the tool boxes—each weighing approximately one thousand pounds—were too heavy to be removed manually. The defendant was contacted, and a forklift was delivered in order to lift the tool boxes from the truck. Notably, testimony revealed that a forklift had been employed to load the tool boxes onto the truck the previous day. While awaiting the arrival of the forklift, plaintiff's neighbor videotaped the events, including the removal of the tools and tool boxes while plaintiff inventoried their contents.[2]

On May 18, 2005, plaintiff filed a complaint in Superior Court, alleging that JS Pallet was liable for negligence and seeking $15,374.09 as compensation for the damaged tool boxes and the missing and damaged tools. The defendant filed an answer denying the claim and asserting separate counterclaims for the cost of the tow truck used to deliver the forklift to plaintiff's residence and for damage to defendant's truck occurring when plaintiff allegedly cut one of its transmission lines; the counterclaim also sought damages for the cost of an air compressor that plaintiff allegedly borrowed from defendant and failed to return.

At trial, plaintiff testified and presented demonstrative evidence, including the video recording, photographs of the tool boxes, and documentary evidence purporting to establish the value of the tool boxes and the damaged and missing tools. One such document, prepared by David Findlay, the owner of Sentry Tools, listed all of plaintiff's tool purchases from the company between 1999 and 2004. The plaintiff testified that the list contained the tools that he had purchased from Sentry Tools and that he had highlighted those tools that were missing when defendant delivered them. The defendant objected to the introduction of this document as a full exhibit, arguing that plaintiff had not laid the proper foundation for its admission. Because the document listed only tool names and corresponding prices, defendant argued that "Mr. Findlay needs to be here to tell us the process he used, and whether these are all the items purchased." The plaintiff then sought to admit the document over objection under the business records exception to the hearsay rule; however, the trial justice ruled that the document would need to be authenticated before it was admitted into evidence. The

---

1. DaSilva testified that he made the decision to let Hernandez go because of complaints from other employees about Hernandez's workplace behavior. DaSilva testified that his decision to deliver the tools in lieu of having them picked up by Hernandez was made so as to avoid a confrontation at JS Pallet.

2. The video, which was admitted into evidence, showed the forklift removing the tool boxes from the truck and plaintiff opening the drawers of the tool boxes, detailing damage to particular tools and to the tool boxes themselves, and remarking that while some drawers were in order, tools were missing from other drawers.

next day, plaintiff's counsel responded that Findlay would be able to testify to authenticate the document as a business record—a proposal that drew no objection from defendant.[3]

When Findlay appeared, his testimony was limited to describing the method used to compile the document listing plaintiff's purchases, which Findlay had prepared in 2004 at plaintiff's request. After Findlay's direct examination, defendant posed an objection, arguing that Findlay had not been listed as a witness in pretrial discovery. The trial justice noted that the document about which Findlay was testifying had been available to defendant and was included in the discovery response. After cross-examining Findlay, defendant renewed his objection to admitting the document as a full exhibit, arguing that Findlay had created the list largely from memory and that some of the tools listed were not used for plaintiff's job as a diesel mechanic. The trial justice overruled defendant's objections.

At the close of evidence, defendant moved for judgment as a matter of law pursuant to Rule 52(c) of the Superior Court Rules of Civil Procedure, arguing that plaintiff had not met his burden of proving damages because he had not provided evidence as to the fair market value of the missing tools and damaged tool boxes. The defendant argued that without expert testimony regarding the fair market value of the disputed items, an award of damages "would be purely speculative." The trial justice denied the motion, declaring that sufficient testimony had been presented as to the damaged tool boxes and missing tools. The trial justice did, however, request that each party present ar-

guments specifying what method the court should use to determine the value of the tools and tool boxes, should damages be awarded.

The defendant argued that, in order for the court to be able to compute damages, plaintiff had the burden to present evidence about the fair market value of the tools prior to the alleged injury and the fair market value of the tools after the incident. Because plaintiff failed to do so, defendant argued that plaintiff had not met this burden and that plaintiff's recovery should therefore be limited to nominal damages.[4]

On the other hand, plaintiff urged the trial justice to employ an actual-value-to-the-owner calculation, rather than a fair market value approach to damages. Citing *DeSpirito v. Bristol County Water Co.*, 102 R.I. 50, 53–54, 227 A.2d 782, 784 (1967), plaintiff argued that Hernandez's tools constituted personal property and that basing damages on fair market value would leave plaintiff without just compensation for damage or loss, or for the cost of replacing such items. In *DeSpirito*, 102 R.I. at 54, 227 A.2d at 784, a case involving damage for loss or injury to personal items, this Court approved an award of damages reflecting the actual value to the owner, calculated by considering factors such as the item's condition and cost when purchased, but excluding any sentimental value placed upon it. The plaintiff argued that, under this approach, the trial justice may determine the value of the item and that plaintiff had presented credible evidence as to the factors to be taken into consideration in determining the actual value of the damaged and lost tools. Such

---

3. Findlay testified on the third day of the trial, prior to closing arguments and after the defense already had presented its witnesses.

4. Interestingly, the trial justice noted that defendant had failed to produce evidence of the fair market value of the air compressor that was the subject of defendant's counterclaim.

factors include original purchase price, length of plaintiff's ownership, condition at the time of loss, and replacement cost to the owner. The plaintiff urged the trial justice to look closely at these factors and to consider "any other facts which will assist in determining the worth of that [item] to its owner at the time of the injury." *Id.*

On March 15, 2010, the trial justice rendered a bench decision in favor of plaintiff; she found that defendant had breached the duty to care properly for plaintiff's property—a duty that defendant assumed once DaSilva elected to deliver the tools to plaintiff's home. The trial justice noted that, while both parties agreed that plaintiff maintained his tools and tool boxes in pristine condition, the evidence presented at trial clearly showed that significant damage had occurred to plaintiff's tools and tool boxes while they were in defendant's custody and control. Furthermore, the trial justice noted that although she did not find that any witness lacked credibility, there was little evidence presented to support defendant's counterclaims; consequently, she dismissed them.

As to the calculation of damages, the trial justice declared that it was within the court's discretion to determine the actual damages based upon the particular circumstances of a case. The trial justice found helpful this Court's decision in *DeSpirito* because it dealt with equipment, which she found to be analogous to Hernandez's property. As to the missing tools, the court assessed damages by depreciating the cost to plaintiff to replace them by 40 percent, based on her conclusion that these

items were not new when they went missing.[5]

The trial justice then noted that it was more difficult to determine the exact value of the damaged tool boxes, because plaintiff replaced only one tool box. The trial justice therefore had "to give minimum value to those boxes," awarding damages after depreciating the plaintiff's claim of the value of the tool boxes by 60 percent. The defendant filed a timely appeal to this Court.

## Standard of Review

■ "It is well established that the factual findings of a trial justice sitting without a jury are accorded great weight and will not be disturbed unless the record shows that the findings clearly are wrong or the trial justice overlooked or misconceived material evidence." *Fisher v. Applebaum*, 947 A.2d 248, 251 (R.I.2008) (citing *Burke–Tarr Co. v. Ferland Corp.*, 724 A.2d 1014, 1018 (R.I.1999)). "If, as we review the record, it becomes clear to us that 'the record indicates that competent evidence supports the trial justice's findings, we shall not substitute our view of the evidence for his [or hers] even though a contrary conclusion could have been reached.'" *Grady v. Narragansett Electric Co.*, 962 A.2d 34, 41 (R.I.2009) (quoting *Tim Hennigan Co. v. Anthony A. Nunes, Inc.*, 437 A.2d 1355, 1357 (R.I.1981)).

## Analysis

■ The defendant first asserts that the trial justice erred by denying defendant's motion for judgment as a matter of

---

5. Prior to applying the depreciation amounts, the trial justice originally stated the value of the missing tools to be $10,495 and the value of the tool boxes to be $6,607—a calculation which totaled an amount in excess of plaintiff's original damages claim of $15,374. The trial justice corrected this miscalculation by using the accurate figures of $8,729 for the missing tools (then depreciated by 40 percent) and $5,307 for the damaged tool boxes (then depreciated by 60 percent) when judgment was entered for plaintiff in the amount of $7,360.

law, arguing that plaintiff failed to establish the damages element of his negligence claim at trial. In a nonjury case, a party may move for judgment as a matter of law after the presentation of an opponent's case, in accordance with Rule 52(c) of the Superior Court Rules of Civil Procedure.[6] *Broadley v. State*, 939 A.2d 1016, 1020 (R.I.2008). Rule 52(c) provides that the court may enter judgment as a matter of law against the party who has been fully heard on an issue, but "[s]uch a judgment shall be supported by findings of fact and conclusions of law." Therefore, "in considering a Rule 52(c) motion, the trial justice weighs 'the credibility of witnesses and determines the weight of the evidence presented by [the] plaintiff'" *Broadley*, 939 A.2d at 1020 (quoting *Pillar Property Management, L.L.C. v. Caste's, Inc.*, 714 A.2d 619, 620 (R.I.1998) (mem.)). Additionally, in a nonjury case, "the trial justice need not view the evidence in the light most favorable to the nonmoving party." *Id.* (citing *Estate of Meller v. Adolf Meller Co.*, 554 A.2d 648, 651 (R.I.1989)).

In the case before us, defendant moved for judgment as a matter of law after each party had presented its respective case. The trial justice denied defendant's motion and stated that she was prepared to render a decision based on the evidence presented at trial. After careful review, we are satisfied that plaintiff presented sufficient evidence establishing the damages element of the negligence claim and that the trial justice's denial of this motion was not error. Both parties testified that Hernandez took excellent care of his tools and kept them in a locked area. It was undisputed that defendant's employees cut the lock and removed plaintiff's property from that secure location. The video recording entered into evidence clearly depicted significant damage to the tools and tool boxes. The trial justice found credible plaintiff's testimony that the tools had not been damaged before he was fired.

With respect to defendant's challenge as to the amount of damages proven at trial, we reject defendant's claim that the trial justice erred by permitting David Findlay to testify. The list of tools Findlay prepared at plaintiff's request that ultimately was introduced at trial was provided to defendant in discovery. At trial, Findlay's testimony was restricted to authenticating the document and testifying to: (1) the method used to compile the list and (2) the cost of the tools purchased by Hernandez.[7] In passing on defendant's argument, we do not overlook the fact that defendant asserted to the trial justice that it was necessary to present Findlay in order to authenticate the exhibit. Although his name was absent

6. Rule 52(c) of the Superior Court Rules of Civil Procedure provides:
 "If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all the evidence. Such a judgment shall be supported by findings of fact and conclusions of law as required by subdivision (a) of this rule. In lieu of ordering judgment as a matter of law, the court, on motion or on its own initiative, may order the action dismissed without prejudice on such terms and conditions as are just."

7. Findlay's testimony was properly admitted under the hearsay exception for records of regularly conducted business activity, Rule 803(6) of the Rhode Island Rules of Evidence, to authenticate the list of tools; it was not allowed based on Findlay's testimony as an expert witness.

from the initial witness list, we fail to see how Findlay's appearance at trial created an element of surprise or otherwise prejudiced defendant. *See Gormley v. Vartian,* 121 R.I. 770, 775, 403 A.2d 256, 259 (1979) ("The purpose of * * * [the] discovery rules is to enable litigants to prepare for trial free from the elements of surprise and concealment so that judgments can rest upon the merits of the case rather than the skill and maneuvering of counsel."). Accordingly, we conclude that the trial justice did not abuse her discretion by allowing Findlay to testify at trial.

 Lastly, we turn to the defendant's final claim that the trial justice erred by calculating damages based on the value of the tools to the plaintiff rather than their fair market value. We reject this argument. After a careful review of the record, we are satisfied that the trial justice did not overlook or misconceive the evidence as to damages, nor did she abuse her discretion in drawing reasonable inferences from the evidence presented at trial. A trial justice is vested with broad discretion in determining the recoverable value of an item to an aggrieved party. *DeSpirito,* 102 R.I. at 54, 227 A.2d at 784. As a general principle, "the law is always concerned that an injured party shall be fully compensated for whatever injury he [or she] may have sustained." *Id.,* at 53–54, 227 A.2d at 784. The record reflects that the trial justice carefully considered all the evidence presented in calculating the value of the missing and damaged items, including the original purchase prices, the length of time the items were used, the condition of the items, and their replacement costs. As such, we determine that the trial justice's award of damages was not clearly erroneous.

### Conclusion

Because we are of the opinion that the defendant's contentions lack merit, the judgment of the Superior Court is affirmed. The papers in this case may be remanded to the Superior Court.