March 11, 2025

**Supreme Court**

No. 2023-249-Appeal.
No. 2023-256-Appeal.
(WC 14-575)

Michael R. McElroy et al.      :

v.      :

Marilyn O. Stephens et al.      :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email: opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Supreme Court

No. 2023-249-Appeal.
No. 2023-256-Appeal.
(WC 14-575)

Michael R. McElroy et al.          :

v.          :

Marilyn O. Stephens et al.          :

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.**  Do the plaintiffs Michael R. and Christine

O. McElroy (plaintiffs or McElroys) maintain an express or implied easement upon

Seaweed Beach in Narragansett, Rhode Island, and if so, do the plaintiffs also

possess an express or implied easement to traverse over certain private properties

to reach Seaweed Beach?  The private properties—three adjoining lots that abut

Seaweed Beach—are individually owned by Marilyn O. Stephens, Paul G. and

Nancy L. Anthony (collectively, defendants), and Vivian H. Lacroix.[1]

---

[1] Although Vivian H. Lacroix was a defendant in the Superior Court, she did not file notices of appeal and therefore is not a party to these consolidated appeals.  Our reference herein to defendants excludes Lacroix unless otherwise stated.  Marilyn O. Stephens and her husband, Edward Stephens, III, purchased the Stephens property in 2010, and both were named as defendants in the Superior Court.  Unfortunately, Edward Stephens, III passed away after this case was remanded to the Superior

This matter came before the Supreme Court pursuant to an order directing that the parties show cause why the issues raised in this appeal should not be summarily decided. After examining the memoranda and arguments presented by the parties, we conclude that cause has not been shown and proceed to decide the appeal at this time. We affirm.

**Factual Background**

The present-day controversy can be traced to 1925, when Carrie M. Davis acquired title to an existing lot (Lot 1) in fee simple from Susan E. Knowles, Sarah B. Champlin, and Hattie S. Tucker. Lot 1 abutted Seaweed Beach to the south and maintained fifty feet of frontage on Stanton Avenue to the north. Additionally, approximately one year later, in 1926, Davis acquired title in fee simple to a second lot (Lot 2) from Knowles, Champlin, and Tucker. Lot 2 bordered Lot 1 and retained 100 feet of frontage on Stanton Avenue to the north, but did not abut Seaweed Beach. Together, Lots 1 and 2 became known as the Davis Heritage.

In 1929, Knowles, Champlin, Tucker, and John R. Champlin granted Davis an easement upon Seaweed Beach, which they owned (the 1929 easement). The 1929 easement benefited the Davis Heritage as the dominant estate and burdened the

Court. Pursuant to Rule 25(a)(2) of the Superior Court Rules of Civil Procedure, "[t]he death shall be suggested on the record and the action shall proceed in favor of or against the surviving parties." Super. R. Civ. P. 25(a)(2). As such, we have removed Edward Stephens, III from the caption of this case.

Knowles-Champlin-Champlin-Tucker Seaweed Beach property as the servient estate. The 1929 easement was recorded in the Narragansett land evidence records (in Book 10, page 10) and granted Davis and her successors in the Davis Heritage, the

> "benefit and advantage, from time to time, and at all times, forever here-after, at her and their respective will and pleasure, and for all purposes connected with the lawful use of Grantee's said lands, to pass and repass with horses, carts, wagons, and other carriages and vehicles, laden and unladen, and on foot, and also to drive cattle and other beasts, through and [over] the entire length and width of [Seaweed Beach]."

The 1929 easement also provided that "said right of way is hereby granted and the premises to which said right is appurtenant."

As time marched on, the property was divided. In 1944, the subdivision of the Davis Heritage began when Davis (and her daughter, Martha) conveyed a portion of the property to Walter H. Potter and Grace K. Potter, *viz.*, the Stephens property.[2] Many years later, this subdivision would have important practical and legal consequences as presented through this litigation; namely, the Stephens property continued to abut Seaweed Beach to the south but directly north an undivided portion

---

[2] All subdivided properties are referenced according to the property owners at the time litigation commenced. Recognizing that "a picture is worth a thousand words," a map depicting the relevant configuration of the Davis Heritage is attached to this opinion. *See McElroy v. Stephens*, 226 A.3d 1288, 1289 n.1 (R.I. 2020) (quoting *Kilmartin v. Barbuto*, 158 A.3d 735, 737 n.5 (R.I. 2017)).

- 3 -

of the Davis Heritage remained (eventually, subdivided to become the McElroy property), which did not abut Seaweed Beach.  The relevant quitclaim deed to the Potters contained the following:

> "Conveyance of the premises herein first described [the Potter Lot], and hereby conveyed, is made subject to all covenants and agreements, on the part of said Carrie M. Davis, her heirs and assigns, to be kept and performed, and all conditions and provisos, contained in said first mentioned deed.  And the grant herein contained with respect to the premises herein last described is made subject to all covenants and agreements, on the part of said Carrie M. Davis, her heirs and assigns, to be kept and performed, and all conditions and provisos, contained in said last mentioned deed."

This language confirmed the existence of the 1929 easement benefiting the Stephens property.

In 1958, the property was conveyed to Conrad S. and Gail E. Darelius, by warranty deed; and in 1965, Walter H. Potter executed a second warranty deed, once again conveying the same property to the Dareliuses.  The 1965 deed expressly stated that the conveyance was "subject to all covenants and agreements, on the part of said Carrie M. Davis, her heirs and assigns, to be kept and performed * * *."  The Dareliuses subsequently transferred the property to the Gail E. Darelius Revocable Trust in 2001.  In 2010, the Trust conveyed the property to Edward and Marilyn O. Stephens.

In 1960, another portion of the Davis Heritage was subdivided—the McElroy property—when Davis conveyed the parcel by warranty deed to Everett and Clara Babcock (the 1960 warranty deed). The McElroy property abuts the Stephens property on its southern border (at that time owned by the Dareliuses) and Stanton Avenue on its northern border but did not abut Seaweed Beach. The 1960 warranty deed contained the proviso "[s]ubject to restrictions of record" and was recorded in Book 47, page 355 of the Narragansett land evidence records. In 1983, Letitia G. Babcock conveyed the property to the Dareliuses by warranty deed (the 1983 warranty deed), which resulted in a merger by deed in which the Dareliuses owned two contiguous parcels from the Davis Heritage, which at the time of trial were the Stephens property and the McElroy property. The 1983 warranty deed contained the following proviso: "Subject to restrictions, easements and right of way of record."

In 1986, the Dareliuses entered into a purchase and sales agreement with plaintiffs for the McElroy property (the 1986 purchase and sales agreement). The 1986 purchase and sales agreement conveyed the parcel to the McElroys, "[t]ogether with the rights, set forth in the deeds, to cross the lands of Mr. and Mrs. Darelius to have access to the water." The property was conveyed by warranty deed (the 1986 warranty deed), which did not contain the above-referenced language from the 1986 purchase and sales agreement, but instead conveyed the property "[t]ogether with

and subject to all easements, rights of way and restrictions of record. (See Book 8, page 528, Book 8, page 594, *Book 10, page 10*, Book 15, page 666 and *Book 47, page 355*.).'' (Emphases added.)

Two additional subdivisions of the Davis Heritage require brief discussion. In 1944, Davis (and her daughter Martha) conveyed to Lawrence A. Wells and Irene Wells a portion of the Davis Heritage (the Lacroix property). This parcel abutted Seaweed Beach on its southern border and, after a series of owners, was conveyed to Vivian H. Lacroix. The final relevant Davis Heritage parcel (the Anthony property) was conveyed in 1992 by Martha Taylor (née Davis) and others to Gail E. Darelius. In 2000, Darelius conveyed the property to the Anthonys. The Anthony property borders the Stephens property to the west and the Lacroix property to the east and abuts Seaweed Beach to the south.

## The Prior Proceeding

On October 7, 2014, the McElroys filed this action in the Superior Court, naming as defendants Edward and Marilyn O. Stephens. According to plaintiffs, this action was precipitated by the Stephenses blocking access to their own driveway, which provided the McElroys access to Seaweed Beach. On October 19, 2015, the McElroys filed an amended complaint, naming as defendants the Stephenses, the Anthonys, and Vivian H. Lacroix. In relevant part, the McElroys claimed an easement to access Seaweed Beach over the Stephens property, the

- 6 -

Anthony property, and/or the Lacroix property. The plaintiffs sought (1) to quiet title to the easement granting them access to Seaweed Beach; (2) a declaration that they are the lawful owners and users of an easement over the Stephens property, the Anthony property, and/or the Lacroix property; and (3) injunctive relief prohibiting the Stephenses from obstructing, hindering, or preventing their use of the easement. In due course, the Stephenses, the Anthonys, and Lacroix filed counterclaims, seeking (1) to quiet title to their respective properties; (2) a declaration that each is the true and lawful owner of their respective properties; and (3) injunctive relief prohibiting plaintiffs from entering their respective properties.

The McElroys filed a motion for summary judgment and defendants, including Lacroix, responded with a cross-motion for summary judgment. Although plaintiffs based their claim of access to Seaweed Beach on three distinct theories—easement appurtenant, easement by implication, and easement by necessity—the hearing justice determined that only the easement appurtenant theory was appropriate for summary judgment and the easement by implication and easement by necessity theories required the development of a factual record. After hearing arguments, the hearing justice concluded that, based upon the language in the 1929 easement, it was undisputed "that an easement was granted to that property" and that the easement "survived all of the subsequent transfers of property." *McElroy v. Stephens*, 226 A.3d 1288, 1291 (R.I. 2020). The hearing justice also noted the

absence of evidence indicating "any different intentions contained in any deeds that would undercut plaintiffs' claim that an easement ran through their property, to all the defendants' properties." *Id*. (brackets omitted). Accordingly, the hearing justice granted the McElroys' motion for summary judgment and denied the cross-motion for summary judgment. *Id*.

On appeal, we determined that "genuine issues of material fact remain," and we vacated the judgment. *See McElroy*, 226 A.3d at 1291-92. In so doing, we explained:

> "It is clear to us that, prior to dividing the property from the original larger parcels, the Davis Heritage enjoyed an easement appurtenant over Seaweed Beach. Although the hearing justice correctly stated that 'an easement appurtenant will pass by deed of the dominant tenement even if the easement is not specifically mentioned within the deed' and that 'the owner of a dominant estate may extinguish an easement appurtenant only by specifically excluding it from the conveyance of the dominant tenement,' he prematurely determined that plaintiffs enjoyed an easement to access Seaweed Beach. It is our opinion that the hearing justice should have first determined whether or not an implied easement or easement by necessity exists for plaintiffs to cross over defendants' properties—in view of the fact that the McElroy property no longer directly abuts Seaweed Beach—and, if so, whether the easement was created by the original grant in 1929 or the 1986 deed." *Id*. (brackets omitted).

Upon remand, a second justice of the Superior Court conducted a bench trial and issued a well-reasoned and comprehensive forty-three-page written decision.

- 8 -

The trial justice concluded that "the clear and unambiguous language of the 1929 easement deed granted Davis an express easement upon Seaweed Beach" and that "[t]he express easement appurtenant benefitted the Davis Heritage—Lots 1 and 2—as the dominant estate * * *." The trial justice further found that after the 1929 easement, "subsequent conveyances included that easement because express easements pass by deed of the dominant tenement 'unless a different intention shall clearly appear in the deed.'" (Brackets omitted) (quoting G.L. 1956 § 34-11-28). Accordingly, the trial justice declared that the 1986 warranty deed, as well as all predecessor deeds, incorporated the 1929 express easement by reference, and that "the 1929 express easement *upon* Seaweed Beach survived the subdivision of the Davis Heritage, because it was not specifically excluded from the deeds." (Emphasis added.)

The trial justice also examined whether plaintiffs possessed an implied easement or an easement by necessity over defendants' properties, including the Lacroix property. In so doing, the trial justice concluded that the McElroys enjoyed an implied easement over the Stephens property because, *inter alia*, the express easement appurtenant upon Seaweed Beach "would be meaningless unless there is some secondary easement or legal permission for the McElroys to reach Seaweed Beach from an access point on their property." Accordingly, the trial justice determined that the McElroys were entitled to "judgment quieting title to the

easement in and over the Stephens [p]roperty," "a declaratory judgment establishing that they are the 'true, lawful and proper owners and users of the easement in and over the Stephenses' [p]roperty,'" and "injunctive relief enjoining [d]efendants from interfering with [p]laintiffs' use of the easement to cross the Stephens [p]roperty." (Brackets omitted.) For the same reasons, the trial justice concluded that the Stephenses were not entitled to relief on their counterclaim.

With respect to the remaining counterclaims, the trial justice concluded that the McElroys did not possess an implied easement over the Anthony property or the Lacroix property. Thus, the trial justice declared that "Lacroix and the Anthonys are entitled to a judgment quieting title to any easements to cross over the Anthony or Lacroix properties," that "Lacroix and the Anthonys are entitled to declaratory judgment stating that [p]laintiffs do not possess any easements over the Lacroix or Anthony properties," and that "Lacroix and the Anthonys are entitled to injunctive relief enjoining [p]laintiffs from interfering with * * * Lacroix's and the Anthonys' quiet enjoyment of their respective properties." The trial justice also determined that the McElroys did not possess an easement by necessity over any of defendants' properties, including the Lacroix property.[3] On January 31, 2023, judgment entered.

---

[3] Because the McElroys have not cross-appealed this determination, we need not examine it.

In relevant part, the judgment provided that the McElroys possess "a permanent easement appurtenant by express grant in and to Seaweed Beach, so called, as set forth in Book 10 at Page 10 of the land evidence records of the Town of Narragansett, *including the right to use the road (currently a dirt road) located to the east of [p]laintiffs' property * * * and running south from said Stanton Avenue (the 'Dirt Road') and over the Dirt Road running to and over the driveway and yard on the property of [d]efendant, Marilyn O. Stephens * * *.*"[4] (Emphasis added.) The judgment further declared that the McElroys possess "a permanent easement appurtenant by implication to access Seaweed Beach, so called, *by use of the Dirt Road* and over the Stephens' Driveway and yard to said permanent easement appurtenant in and to Seaweed Beach." (Emphasis added.)

While judgment entered in favor of the McElroys and against the Stephenses, on the remaining counterclaims judgment entered for the Anthonys and Lacroix, declaring that "[e]xcept as otherwise set forth," the McElroys "do not possess any

---

[4] The trial testimony demonstrates that all parties commonly used the Dirt Road. For instance, Mr. McElroy testified that to reach the Stephens property (on his way to Seaweed Beach) he traversed the Dirt Road. Mr. McElroy explained that he was not aware that the roadway was owned by the Anthonys and "thought it was a roadway that was used by everybody in this little private area, by the Lacroixs, by the Anthonys, [and] by the Stephens[es] * * *." Indeed, Ms. Lacroix's husband, Matthew Lacroix, and Ms. Stephens testified that, because their properties did not border Stanton Avenue, they used the Anthonys' roadway (which bordered Stanton Avenue) as a right-of-way to access their respective properties.

- 11 -

easement in or across their respective properties and title thereto, is hereby quieted in said [d]efendants." (Emphasis added.) On February 8, 2023, the Stephenses and the Anthonys filed a timely appeal.

The following day, on February 9, 2023, the Stephenses and the Anthonys filed a motion to amend the judgment pursuant to Rule 59 of the Superior Court Rules of Civil Procedure. Approximately two months later, the Stephenses and the Anthonys filed a memorandum in support of the motion to amend the judgment, arguing that the judgment was inconsistent with the trial justice's written decision. For instance, defendants averred that although the trial justice's decision stated that the McElroys did not possess an easement over the Anthony property, judgment entered declaring that the McElroys had "a permanent easement * * * including the right to use the [D]irt [R]oad running to the property of [d]efendant Marilyn O. Stephens." The Stephenses and the Anthonys added that the "[D]irt [R]oad is the exclusive property of [the Anthonys]." After hearing oral argument, on May 19, 2023, the trial justice denied the motion to amend judgment. The defendants filed a premature notice of appeal on June 2, 2023, and an order denying the motion to

amend judgment entered on July 19, 2023.[5]  This Court consolidated the appeals on October 13, 2023.

**Standard of Review**

"It is well established that the factual findings of a trial justice sitting without a jury are accorded great weight and will not be disturbed unless the record shows that the findings clearly are wrong or the trial justice overlooked or misconceived material evidence." *Wellington Condominium Association v. Wellington Cove Condominium Association*, 68 A.3d 594, 599 (R.I. 2013) (quoting *Hernandez v. JS Pallet Co.*, 41 A.3d 978, 982 (R.I. 2012)); *see also Hilley v. Lawrence*, 972 A.2d 643, 648 (R.I. 2009) ("This Court will reverse the decision of a trial justice to grant or deny a permanent injunction only 'when it can be shown that the trial justice misapplied the law, misconceived or overlooked material evidence or made factual findings that were clearly wrong.'") (quoting *Holden v. Salvadore*, 964 A.2d 508, 512-13 (R.I. 2009)).  "If, as we review the record, it becomes clear to us that the record indicates that competent evidence supports the trial justice's findings, we shall not substitute our view of the evidence for that of the trial justice even though a contrary conclusion could have been reached." *Wellington Condominium*

---

[5] "It is well settled that this Court treats a premature appeal as timely filed." *McCormick v. Narragansett Improvement Company, Inc.*, 314 A.3d 963, 965 n.4 (R.I. 2024).

- 13 -

*Association*, 68 A.3d at 599 (brackets omitted) (quoting *Hernandez*, 41 A.3d at 982). We review a trial justice's rulings on questions of law *de novo*. *See Hilley*, 972 A.2d at 649.

"In litigation over asserted rights to an easement, the party claiming the easement has a heightened burden of proof of clear and convincing evidence because of the policy considerations against placing undue burdens upon property." *Wellington Condominium Association*, 68 A.3d at 599. "Indeed, 'although a plaintiff in a civil action normally must meet his burden by only a preponderance of the evidence, the plaintiff must overcome a higher clear and convincing standard to prove an easement.'" *Id.* (brackets omitted) (quoting *Ondis v. City of Woonsocket ex rel. Treasurer Touzin*, 934 A.2d 799, 803 (R.I. 2007)).

Finally, a trial justice's decision "on a Rule 59(e) motion following a bench trial will be overturned only if he or she committed a 'manifest error of law in the judgment'—meaning an error that is 'apparent, blatant, conspicuous, clearly evident, and easily discernible from a reading of the judgment document itself.'" *Greensleeves, Inc. v. Smiley*, 68 A.3d 425, 434 (R.I. 2013) (quoting *American Federation of Teachers Local 2012 v. Rhode Island Board of Regents for Education*, 477 A.2d 104, 105, 106 (R.I. 1984)).

- 14 -

## Discussion

On appeal, defendants contend that the trial justice erred in four instances: (1) finding that an express easement existed over their properties, (2) concluding that an implied easement existed over their properties, (3) admitting into evidence the 1986 purchase and sales agreement, and (4) denying the motion to amend the judgment. We disagree.

## Express Easement

The defendants attack the trial justice's conclusion that the McElroys possess an express easement over their properties. Specifically, the Stephenses and the Anthonys allege that "[t]here is no specific grant of an easement contained in the Dareliuses['] deed to the [p]laintiffs in the 1986 recorded deed" and that the 1986 warranty deed "did not contain the same specific language as the 1986 purchase and sale agreement regarding any easement over the [Stephens] property." They are incorrect.

We have made clear that, "when construing an instrument that purportedly creates an easement, it is this Court's duty to effectuate the intent of the parties." *Wellington Condominium Association*, 68 A.3d at 600 (brackets and deletion omitted) (quoting *Hilley*, 972 A.2d at 649). Thus, "when the written terms of an agreement are clear and unambiguous, they can be interpreted and applied to the undisputed facts as a matter of law." *Id.* (brackets omitted) (quoting *Hilley*, 972 A.2d

at 649). "Additionally, where terms of an easement are clear and unambiguous, neither oral testimony nor extrinsic evidence will be received to explain the nature or extent of the rights acquired." *Id.* (brackets omitted) (quoting *Hilley*, 972 A.2d at 649).

In contrast to defendants' appellate argument, the trial justice concluded that the 1986 warranty deed incorporated the 1929 express easement. We agree with the trial justice and conclude that the 1986 warranty deed clearly and unambiguously incorporated the 1929 express easement upon Seaweed Beach. Specifically, the 1986 warranty deed conveyed the McElroy property, "[t]ogether with and subject to all easements, rights of way and restrictions of record. (See Book 8, page 528, Book 8, page 594, *Book 10, page 10*, Book 15, page 666 and Book 47, page 355.)." (Emphasis added.) It is undisputed that the citation to Book 10, page 10 references the 1929 easement.

Moreover, the 1986 warranty deed also incorporated Book 47, page 355, which was the 1960 warranty deed (from Davis to the predecessors in title, the Babcocks). This warranty deed provided that the conveyance was "[s]ubject to restrictions of record," a clear and deliberate reference to the 1929 easement. It is well established that "[i]n any conveyance of real estate all rights, privileges, and appurtenances belonging or appertaining to the granted estate shall be included in the conveyance, unless a different intention shall clearly appear in the deed, and it

- 16 -

shall be unnecessary to enumerate or mention them either generally or specifically." Section 34-11-28. Accordingly, the McElroys possess an express easement upon Seaweed Beach, and we reject defendants' argument that "[t]here is no specific grant of an easement contained in the Dareliuses['] deed to the [p]laintiffs in the 1986 recorded deed."

### Implied Easement

Having determined that the 1986 warranty deed expressly incorporated the 1929 easement appurtenant upon Seaweed Beach, the trial justice declared "that permission to cross the Stephens [p]roperty was a necessary incident to the [McElroys'] enjoyment of the easement upon Seaweed Beach, which the Dareliuses had the legal right to grant to the McElroys, and which is valid regardless of whether it was expressly granted in the deed." The defendants suggest that the McElroys failed to present clear and convincing evidence demonstrating an implied easement over their properties. Most notably, defendants claim that, when the McElroys purchased the parcel in 1986, the property was "separated" and the McElroys "were not part of any unity of ownership." Without a unity of ownership, defendants assert, there can be no implied easement. The defendants also claim that photographs admitted into evidence failed to demonstrate an "apparent path or marker that indicates any reasonable way to traverse [the Stephens] yard" and that "[t]he notion

- 17 -

[of] continuous use was contested at trial * * *." These arguments are lacking in merit.

The law surrounding implied easements dictates that, "when land is divided, the law will imply a grant of 'all those continuous and apparent easements which have in fact been used by the owner during the unity, though they have no legal existence as easements.'" *Hilley*, 972 A.2d at 650 (quoting *Catalano v. Woodward*, 617 A.2d 1363, 1367 (R.I. 1992)); *see also* § 34-11-28. "An implied easement is predicated upon the theory that when a person conveys property, he or she includes or intends to include in the conveyance whatever is necessary for the use and the enjoyment of the land retained." *Hilley*, 972 A.2d at 650 (quoting *Bovi v. Murray*, 601 A.2d 960, 962 (R.I. 1992)). Indeed, "[i]f there is no unity of ownership, there can be no implied easement." *Bovi*, 601 A.2d at 962. "[T]he standard for an easement by grant requires that the party claiming an easement show by clear and convincing evidence that the claimed easement was (1) apparent, (2) permanent, and (3) reasonably necessary for the enjoyment of the claimant's parcel prior to severance." *Wellington Condominium Association*, 68 A.3d at 603. "Because unity of possession destroys existing easements, no easement can be created over a section of land that is unified in the possession of one owner." *Catalano*, 617 A.2d at 1367.

Here, the Dareliuses purchased the Stephens property in 1958 and the McElroy property in 1983, unifying possession of these two contiguous Davis

Heritage parcels in one owner and extinguishing any existing easements in this unified property. *See Catalano*, 617 A.2d at 1367. Notwithstanding the dissolution of any existing easements in this unified property, the Dareliuses conveyed the McElroy property to plaintiffs through the 1986 warranty deed and, as discussed herein, expressly incorporated the restrictions in Book 10, page 10, and in Book 47, page 355. As explained by the trial justice, "[t]he grant of this [1929] easement would be meaningless unless there is some secondary easement or legal permission for the McElroys to reach Seaweed Beach from an access point on their property."[6]

Indeed, the evidence is uncontroverted that at the time the Dareliuses owned the Stephens and McElroy properties in 1983, the Dareliuses intended to convey to the McElroys not only an easement *upon* Seaweed Beach but also an easement to *access* Seaweed Beach. For instance, the 1986 warranty deed (from the Dareliuses to the McElroys) incorporated the 1929 express easement upon Seaweed Beach, as well as the 1960 warranty deed provision that the conveyance was "[s]ubject to restrictions of record." The inclusion of the 1929 express easement granting the McElroys the use of Seaweed Beach, as well as the incorporation of the restriction

---

[6] Additionally, because the 1929 express easement derived from the Knowles-Champlin-Champlin-Tucker Seaweed Beach property (as the servient estate) that separate property and easement were not subject to a merger by deed when the Stephens and McElroy properties unified in 1983. As such, the 1929 express easement continued to benefit the McElroy parcel (as the dominant estate) "at all times, forever here-after * * *."

found in the 1960 warranty deed, would be superfluous if the Dareliuses did not intend to convey to the McElroys an easement to reach Seaweed Beach. *See Hilley*, 972 A.2d at 650 ("An implied easement is predicated upon the theory that when a person conveys property, he or she includes or intends to include in the conveyance whatever is necessary for the use and the enjoyment of the land retained.") (quoting *Bovi*, 601 A.2d at 962); § 34-11-28. In addition, the trial justice noted Mr. McElroy's testimony that he conditioned purchase of the McElroy property on access to Seaweed Beach and that the Dareliuses designated their driveway as the right-of-way for the McElroys to reach Seaweed Beach.[7]

While defendants submit that some conflicting evidence was submitted concerning the satisfaction of the implied easement requirements, these discrepancies focused on events occurring after severance in 1986. Instead, "[t]he proper inquiry for the existence of an easement by implication focuses on the facts and circumstances at the time of severance." *Martin v. Wilson*, 246 A.3d 916, 925 (R.I. 2021) (deletion omitted) (quoting *Vaillancourt v. Motta*, 986 A.2d 985, 988 (R.I. 2009)). In any event, the trial justice, as factfinder, resolved these discrepancies in favor of the McElroys. The trial justice further determined that "[t]he credible

---

[7] The language in the 1986 purchase and sales agreement further supports this intention, specifically, that the Dareliuses conveyed the property to the McElroys, "[t]ogether with the rights, set forth in the deeds, *to cross the lands of Mr. and Mrs. Darelius to have access to the water*." (Emphasis added.)

evidence presented at trial demonstrated that the Dareliuses believed that access to Seaweed Beach via the Stephens [p]roperty was reasonably necessary to the convenient and comfortable enjoyment of the McElroy [p]roperty."

On appeal, the trial justice's factual findings "are accorded great weight and will not be disturbed unless the record shows that the findings clearly are wrong or the trial justice overlooked or misconceived material evidence." *Wellington Condominium Association*, 68 A.3d at 599 (quoting *Hernandez*, 41 A.3d at 982). The defendants failed to satisfy this heavy burden, and accordingly, we perceive no error in the trial justice's determination that the McElroys established by clear and convincing evidence an implied easement to reach Seaweed Beach.

## Parol Evidence Rule

The defendants contend that the trial justice's admission into evidence of the 1986 purchase and sales agreement violated the parol evidence rule and was error. "The parol evidence rule bars the admission of any previous or contemporaneous oral or written statements that attempt to modify an integrated written agreement." *Martin*, 246 A.3d at 924 (brackets omitted) (quoting *Fleet National Bank v. 175 Post Road, LLC*, 851 A.2d 267, 276 (R.I. 2004)). This rule is "grounded in the notion 'that a complete written agreement merges and integrates all the pertinent negotiations made prior to or at the time of execution of the contract.'" *Id.* (quoting *Management Capital, L.L.C. v. F.A.F., Inc.*, 209 A.3d 1162, 1174 (R.I. 2019)).

- 21 -

"Once integrated, other expressions, oral or written, that occurred prior to or concurrent with the integrated agreement are not viable terms of the agreement." *Id.* (quoting *Management Capital, L.L.C.*, 209 A.3d at 1174).

As a threshold matter, we observe that in assessing whether the McElroys maintained an express easement to use Seaweed Beach, the trial justice determined that "[i]t is clear that the Dareliuses intended their actions to have the effect of granting a valid easement to [p]laintiffs because the *deed* specifically referenced the 1929 Champlin easement grant." (Emphasis added.) Having carefully reviewed the trial justice's decision, we are therefore satisfied that the express easement analysis did not unduly rely upon the 1986 purchase and sales agreement.

With respect to the trial justice's implied easement analysis, this Court has previously recognized that "[s]uch an inquiry requires the consideration of extrinsic evidence." *Martin*, 246 A.3d at 925. "The proper inquiry for the existence of an easement by implication focuses on the facts and circumstances at the time of severance." *Id.* (deletion omitted) (quoting *Vaillancourt*, 986 A.2d at 988). Indeed, in our prior decision in this case, we instructed that upon remand, "the facts and circumstances at the time of the subdivision of the Davis Heritage, *as well as at the time of the 1986 deed to the McElroy property, must be considered.*" *See McElroy*, 226 A.3d at 1292 (emphasis added).

Because the determination of an implied easement allows the consideration of extrinsic evidence, we conclude that the trial justice did not err when she considered the 1986 purchase and sales agreement. *See Martin*, 246 A.3d at 925. In so doing, we recognize that the pertinent language of the 1986 purchase and sales agreement—referencing "the rights, set forth in the deeds, to cross the lands of Mr. and Mrs. Darelius to have access to the water"—is consistent with the 1986 warranty deed, which incorporated the 1929 easement and the 1960 warranty deed. Accordingly, admission of the 1986 purchase and sales agreement to examine whether the McElroys possessed an implied easement did not violate the parol evidence rule. *See also Fram Corporation v. Davis*, 121 R.I. 583, 589, 401 A.2d 1269, 1273 (1979) ("[E]vidence of prior or contemporaneous negotiations or agreements is inadmissible *to alter, vary, or contradict* the terms of an integrated written agreement.") (emphasis added).

**Motion to Amend Judgment**

The defendants posit that the judgment entered in this case is "inconsistent with the evidence offered at trial and the [trial justice's] own [d]ecision." They explain that the trial justice "ordered [an] easement over the [D]irt [R]oad, and the entrance gate, [which] are the property of the [Anthonys] who have been removed from the case," and that the Stephenses were ordered to "remove all obstructions" even though "[b]ased on [i]nformation and belief, the Stephens[es] do not have the

- 23 -

authority to remove any shoreline foliage without [Coastal Resources Management Council] approval."[8]  Stated differently, defendants request that this Court review the trial justice's written decision (and the trial evidence) for consistency with the judgment.  We decline to do so.

This Court has recognized that "a proper Rule 59(e) motion is directed at correcting 'a manifest error of law in the judgment—meaning an error that is apparent, blatant, conspicuous, clearly evident, and easily discernible from a reading of the judgment document itself.'" *Paroskie v. Rhault*, 241 A.3d 698, 701 (R.I. 2020) (quoting *Greensleeves, Inc.*, 68 A.3d at 434).  This Court has stated that "if the error is not obvious unless one reads the underlying decision, the error is not a manifest error in our opinion." *Id*. (quoting *Bogosian v. Bederman*, 823 A.2d 1117, 1119 (R.I. 2003)).  Mindful of our limited "manifest error of law" standard of review, as well as the necessity to review the underlying decision and/or evidence to assess defendants' argument, we are of the opinion that the trial justice did not err when she denied the Rule 59(e) motion.

---

[8] The defendants' statement that the Anthonys "have been removed from the case" is incorrect.  While judgment entered in favor of the Anthonys on their counterclaim, "[e]xcept as otherwise set forth," the Anthonys filed notices of appeal and remain a party on appeal.

## Conclusion

For the reasons stated, we affirm the judgment.  The papers in this case are remanded to the Superior Court.

## Appendix A



**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**

Licht Judicial Complex
250 Benefit Street
Providence, RI  02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Michael R. McElroy et al. v. Marilyn O. Stephens et al. |
| **Case Number** | No. 2023-249-Appeal.<br>No. 2023-256-Appeal.<br>(WC 14-575) |
| **Date Opinion Filed** | March 11, 2025 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Washington County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Sarah Taft-Carter |
| **Attorney(s) on Appeal** | For Plaintiffs:<br><br>Justin T. Shay, Esq. |
| | For Defendants:<br><br>Matthew S. Dawson, Esq. |